THE PEOPLE ex rel. HOGAN, Appellant *v.* STEPHEN B. FRENCH et al., as Police Commissioners of the City of New York, Respondents.

119 493
119 505
119 506
119 508
119 493
123 637

The relator, a member of the police force of the city of New York, was dismissed therefrom upon a charge of " conduct unbecoming an officer;" the specification was, that at a named date and place, he was so much under the influence of liquor as to be unfit for duty. It appeared that the relator had served on the police force fifteen years, during which time his record had been in every way excellent and he had drank no intoxicating liquor. On the occasion in question he had been on duty during a strike of street-car drivers, who resisted the running of the cars. For five days he was continuously employed in guarding the cars and repelling attacks upon them. On the morning of the fifth day, which was severely cold, he was ordered out without opportunity to get his breakfast and detailed to guard moving cars; he rode upon the front platforms of such cars until the middle of the afternoon, when he became faint and ill. Upon reporting his illness to the sergeant, the latter took him off the cars and advised him to report sick, but the relator persisted in remaining on duty. Later he took one drink of brandy and peppermint to relieve his illness and the surgeon who saw him at eight o'clock testified that his breath smelled slightly of liquor; that he could walk steadily, and talk coherently, his speech being a little thick; that in his opinion he had been drinking, but was not then intoxicated. The relator was on these facts dismissed from the force. *Held* (RUGER, Ch. J. and GRAY, J. dissenting), that the dismissal was error; that the evidence failed to show any breach of discipline by the relator, or conduct unbecoming an officer; and that, therefore, as the facts admitted of no inference of guilt, of conscious breach of discipline or violation of rule, the case presented a question of law reviewable by the General Term on certiorari, and also reviewable here. *People ex rel.* v. *French* (110 N. Y. 494) distinguished.

(Argued February 24, 1890; decided March 11, 1890.

APPEAL from order of the General Term of the Supreme Court in the first judicial department, entered upon an order made July 9, 1889, which affirmed the decision of defendant, as the board of police commissioners of the city of New York, in proceeding against the relator, a member of the police force, by which decision he was discharged from the force.

The nature of the charge against the relator and the material facts are stated in the opinion.

*John M. Tierney* for appellant. This court has power to review the judgment of the General Term in the case at bar. (Code Civ. Pro. § 2140 ; *Russell* v. *Conn.*, 20 N. Y. 81 ; *Tracy* v. *Altmyer*, 46 id. 598 ; *Foote* v. *People*, 59 id. 321 ; *People ex rel.* v. *Comrs.*, 106 id. 64 ; *People ex rel.* v. *Comrs.*, Id. 653 ; *People ex rel.* v. *Fire Comrs.*, 96 id. 672 ; *People ex rel.* v. *Fire Comrs.*, 100 id. 82.) The court below erred in finding that it had no power to redress the wrong inflicted upon the relator, after finding that there was no evidence contained in the record, which in the slightest degree justified it. (*People* v. *Comrs.*, 52 How. Pr. 289 ; Code Civ. Pro. §§ 2137, 2138, 2140 ; *People* v. *Comrs.*, 106 N. Y. 64.) The relator having reported sick to his commanding officer, as required by rule 121 of the police department, had a right to be relieved from duty, and not having been so relieved, was justified in using such remedial agents as were necessary to help him. (Laws of 1882, chap. 410, § 250.)

*D. J. Dean* for respondents. The requisites of jurisdiction existed and the proceedings were regular. (Laws of 1882, chap. 410, § 272 ; *People ex rel.* v. *Bd. of Police*, 99 N. Y. 676.) The judgment of the board of police is sought to be reversed upon the ground of its alleged injustice to relator, but as there is sufficient evidence to sustain the determination this court cannot interfere. (*People ex rel.* v. *Fire Comrs.*, 32 N. Y. 358 ; *People ex rel.* v. *Fire Comrs.*, 96 id. 644 ; *People ex rel.* v. *Bd. of Police*, 93 id. 79, 101 ; *People ex rel.* v. *French*, 110 id. 494.) The truth and adequacy of the excuse offered by the relator in palliation of his intoxication, are for the board of police to pass upon, and its judgment is conclusive. (*People ex rel.* v. *French*, 102 N. Y. 724 ; *People ex rel.* v. *French*, 110 id. 494.)

Finch, J. I am unable to resist the conviction that, upon the record returned to us in this case, the charge against the relator was wholly and essentially unproved, and that he was guilty of no offense whatever. The charge was "conduct

unbecoming an officer," and the specification that at a named date and place he was so much under the influence of liquor as to be unfit for duty. The facts established were that he had been upon the force for upwards of fifteen years, and that during all that period his record had been a very excellent one, the sergeant under whose command he had served saying, upon the hearing, and expressing the greatest pleasure in making the declaration, that he was a first-class officer. For fifteen years he had drank no intoxicating liquor, so that there was about him no taint of evil habit to suggest a possible yielding to temptation. If the fact be deemed somewhat remarkable, it is significant that nothing to the contrary was found in the record of his service, and the sergeant, who must have known him thoroughly and well, vouched for his truthfulness by saying that he thought his statements were correct in every particular. The relator was on duty during the railroad strike in the early days of the year of 1889, when nearly all the street-cars in the city were abandoned by their drivers, and their movement resisted. For five days he had been continuously employed in guarding the cars and repelling angry and dangerous attacks upon them. On the morning of the fifth day, which was severely cold, he was ordered to the Sixth Avenue Railroad station without opportunity to get his breakfast, and was detailed to guard the moving cars, upon the front platforms of which he rode up and down until the middle of the afternoon, when he became faint and ill. He reported his sickness to Sergeant Norton, who says he took him off the cars and advised him to report sick, but relator said that in view of the trouble he thought it would be mean to do so, and persisted in staying on duty. Later he took one drink of brandy and peppermint to relieve his illness, and, not being accustomed to it, some degree of intoxication followed. The surgeon saw him at eight o'clock and says " his breath smelled slightly of liquor; he could walk steadily and talk coherently; his speech was a little thick; I was of the opinion that he had been drinking; he was not intoxicated at the time." The sergeant says he reported sick after the strike was over. On

this state of facts he was dismissed from the force, and the question raised is whether they furnished any evidence of breach of discipline or violation of the rules of the department.

The General Term, with undisguised reluctance, affirmed the order upon the authority of our decision in *People ex rel.* v. *French* (110 N. Y. 494). I think that they misunderstood its scope and meaning, and viewed it as establishing a rigid and arbitrary rule which left the action of the police commissioners practically without restraint. To that decision we shall steadily adhere. Its conclusion we do not desire to change, and its doctrine, which we then approved, seems to us still entirely correct and sound. That doctrine was that where there was any evidence of the offense charged, or the facts admitted of any inference of guilt, we should follow the conclusion of the commissioners in view of their peculiar responsibilities and their larger opportunities of arriving accurately at the truth. Upon the facts in that case an inference of guilt, of a breach of discipline and conscious and voluntary violation of the rules, was not only possible, but entirely natural and just. The proof showed that the officer was so badly intoxicated, so utterly under the influence of liquor, as to throw grave doubt upon his statement that his condition was due to the single drink of brandy and ginger given him by a third person, and to indicate that the sickness of which he then complained was a pretense to hide an existing intoxication. Conscious of the lameness of that explanation, the relator in that case claimed that he had previously taken two doses of bromide of potassium and ammonia, but evidence was given showing that the consequent medicinal effect would not explain, or help to explain, the condition of gross and palpable intoxication which existed. On such a state of facts the excuse of sickness and of brandy taken as a medicine — always suspicious and doubtful unless under the clearest and strongest proof — became little more than a pretense. The inference or guilt was at least a possible one, and we declined to interfere with it. And so, in this case, if a similar inference is at all possible, if a reasonable man can reasonably infer a conscious

breach of discipline or violation of rule from any or all the facts, then we must hold the conviction to have been justified; but if such an inference is not possible, if there is no shadow of justification for it, the case presents a pure question of law, a judgment rendered without any evidence to support it, which always requires at our hands a reversal.

Let us recur then to the facts.  An officer who had served on the force for fifteen years, with a record and reputation every way excellent, who, during that long period had never once drank intoxicating liquor and whose truthfulness his commanding officer does not hesitate to affirm, is engaged, for five days, in a struggle with strikers who are striving, often with violence, to prevent the running of the street-cars.  On the morning of the fifth day, through the severe cold of the winter and without opportunity for breakfast, he is sent to his difficult and perilous work.  Between the hours of three and four o'clock in the afternoon he becomes faint and ill. Exhaustion and cold and lack of customary food produce their natural result.  He complains of illness to his sergeant.  The latter, who has seen and watched him, feels no doubt of the fact and takes him off the cars and advises him to report sick. That meant an abandonment of the relator's duty in an hour of great peril.  He declines to do so.  He determines to continue on duty and stand up to his work, in spite of weakness and suffering.  At 4.20 in the afternoon he is perfectly sober, but soon after he takes one drink of brandy and peppermint and it overcomes him.  At 5.30 he appears to be and is somewhat under the influence of liquor and is taken to the station-house.  At eight o'clock, when examined by the surgeon, he is not intoxicated.  Summing it all up, it comes to this:  An officer on duty when the service is necessary and perilous, takes brandy and peppermint in a single instance, as a medicine to palliate suffering and enable him to continue in the performance of his duty.  Unfortunately it produces a temporary intoxication and fails as a remedy.  Is that intoxication a breach of discipline and a violation of the rules ?  Clearly it is not, if that is the truth about it.  Can anybody say, with a

grain of justice in saying so, that this was "conduct unbe-coming an officer?" That was the charge formally presented, and it requires us to consider the nature and quality of his act, the purpose and aim of what he did, the character of his conduct. That conduct was not unbecoming an officer. What he consciously did, what he meant to do, what he tried to accomplish and thought he could, was to brace his exhaustion and weakness with a temporary stimulant so as to enable him to continue in the performance of his duty. He took it only and solely as a medicine and for its useful effect. If there was the least ground for doubting that, I should vote for his removal. Unfortunately he misjudged. Consequences came which he did not anticipate and the reverse of what he expected, and, while his conduct was right, he is punished for such unexpected consequences. It is said that he pleaded guilty. That is not true in any just or reasonable sense. He did admit that while on duty he was under the influence of liquor. That is all he admitted, and he did so in connection with other facts which amounted, not to a plea of guilty, but to an assertion of innocence. And so the charge against him was wholly unproved. There was not the least evidence to sustain it. If I could see in his past habits, in his official record, in the circumstances detailed or surrounding his alleged offense, the slightest ground for an inference that he was not really and truly ill, that he took the brandy as a drink and not as a medicinal stimulus, that he sought his own pleasure and not strength to perform his duty, that he acted recklessly and without reasonable motive, I should be prompt to uphold the decision of the commissioners. Almost invariably sickness is made the excuse for intoxication. It is right to suspect it, to challenge it severely, to reject it almost uniformly. But when, beyond any question or doubt, it is the truth, and the dose of brandy has been resorted to in a sudden emergency, from a commendable motive, and with a reasonable expectation that it will sustain the failing ability to perform duty, there is no breach of discipline, there is no conduct unbe-coming an officer, and it does not become such because a

partial intoxication supervenes which no one could reasonably have anticipated. These views lead to a reversal of the order.

The order of the General Term and of the commissioners should be reversed, with costs in this court and the Supreme Court.

GRAY, J. (dissenting). I must express my dissent from the views which lead my associates to a reversal of this order.

The facts in the record seem to furnish a strong appeal to the sympathies in behalf of the appellant, and to indicate that his was an extremely severe punishment; but, with the degree of the punishment and the exculpatory circumstances of the appellant's case, the appellate tribunal has no power to deal. The police commissioners might well have considered the good record of the accused, and the mitigating circumstances under which his offense occurred. But this case is indistinguishable from that of *People ex rel.* v. *French* (110 N. Y. 494), where we unanimously agreed upon the rule of law in such cases. The rule was salutary and sound and, in my opinion, to reverse the order in this case is to introduce an inconsistency in our rulings, which will impair the force and good effect of that rule.

As a record, the *Masterson Case* was even less strong than this for the application of the rule. There the accused pleaded not guilty. Here the offense charged was that the officer was so much under the influence of liquor as to be unfit for duty. Upon the trial the intoxication was admitted by the accused and was independently proved. The trial before the commissioners was conducted with an evident bias in favor of the officer, from his previous record. He was told to plead to the charge one way or the other, and then said, " it is true." The sergeant said there was no doubt in his mind that the accused was under the influence of liquor, and the roundsman testified to the same thing. Under rule 193 of the police force " any member of the police force may be punished by the board of police, in their discretion, * * * by dismissal from the force on conviction of * * * intoxication * * *." That punishment the board decided to, and did, impose.

It is impossible to say that there was not evidence here, upon

which the commissioners acted. It is said that the plea of the accused may be disregarded as an admission, and that the evidence does not amount to proof of conduct unbecoming an officer; but, certainly, with, or without, his plea, it was testified that he was under the influence of liquor; which is the precise offense which the rule specifies as warranting the commissioners to exercise their discretion, in the imposition of the punishments prescribed. It does seem to me that we cannot rearrange and weigh and explain away evidence to relieve against what we may deem an unmerited sentence, without arrogating to ourselves new functions and powers as a tribunal. This court should not review the determination of the court below, except when the record presents some question of law. No such question arises here. The evidence is not even conflicting as to the officer's having been affected by liquor. It only raised a fair question as to whether the conceded and proved offender should be dealt with severely.

In the *Masterson Case*, the accused officer attempted to escape the consequences of the proof of his intoxication, by showing that his physical ailment was the cause of taking the liquor. RUGER, Ch. J., delivered the opinion of the court, in which we all concurred, and said: "Whether under special circumstances a particular officer is excusable for having voluntarily rendered himself unfit for duty, or violated police regulations, depends so much upon the personal knowledge and experience of the commissioners and the consideration by them of individual character, the general moral condition and discipline of the force, and other facts peculiarly within their knowledge, that an attempted review of their action by an appellate tribunal would proceed in a great measure in ignorance of the facts upon which it was predicated.   *   *   *   We are, therefore, of the opinion that this question was exclusively for the consideration of the commissioners, and that the appellate court had no authority to review the exercise of their discretion on the subject." And before that, this court had held, in *People ex rel.* v. *Fire Commissioners* (82 N. Y. 358), that " we are not to inquire into the merits of the decision,

or the justness of the penalty imposed. We can only look far enough to see that some violation of duty, some incompetency, or negligence, was charged against the relator and evidence given tending to establish its existence."

There was no doubt here about the fact of intoxication. The only doubt which exists is, whether, under the attendant circumstances, the penalty mentioned in the rule ought to have been inflicted. But what has the appellate tribunal to do with that? The rule was one which was within the power of the police board to enact. (*People ex rel.* v. *Police Comrs.*, 99 N. Y. 676.)

It was the law of the case and conferred a discretionary power upon the board with respect to the punishment of a convicted offender. The commissioners had before them the accused and the proofs. They knew of the circumstances surrounding his act, but they also knew the officer, and still they decided to impose the extreme punishment. We cannot say there was no evidence to authorize their judgment of conviction; only, that the excuse might have had some weight with them. But, as we held in the *Masterson Case*, the matter of the excuse was one exclusively for the consideration of the commissioners.

I think we should adhere to our previous ruling, and that a reversal of this order will tend to introduce a confusion of authority, which will promote doubt and dissatisfaction in the force, respecting the determination of their governing body, to the detriment of its efficiency. To reverse, in the face of the former ruling, is to invite appeals to this court in every case where a member of the force of a department of a municipal corporation is disciplined, and to subject the determination, upon questions of fact and discretion, to the judgment of this court.

I think every consideration of policy and the importance to the community that there shall be a uniform rule, with respect to the review of these cases in the appellate court, consistently adhered to, demand that the order appealed from should be affirmed.

All concur with FINCH, J., except RUGER, Ch. J., and GRAY, J., dissenting.

Order reversed.