PEOPLE *ex rel.* BOCKELL *v.* MACLEAN *et al.*, Police Commissioners.

(*Superior Court of New York City, General Term.* January 11, 1892.)

MUNICIPAL CORPORATIONS—DISMISSAL OF POLICEMAN.

At the trial by police commissioners of a police officer for intoxication, he testified that while on duty he was thrown from his horse and rendered unconscious; that citizens gave him whisky to revive him; and that, after completing his tour, he went to the station, and, being compelled to sit for two hours in a warm room, he fell asleep. The citizens corroborated him, and none of the testimony was contradicted. His previous character was good. *Held* that, as there was no evidence of voluntary intoxication or a breach of discipline, the order of the commissioners dismissing him should be reversed.

*Certiorari* on the relation of Frank C. Bockell against Charles F. Mac-Lean and others, constituting the board of police commissioners of the city of New York, to review their action in removing relator from the police force. Reversed.

Argued before FREEDMAN, McADAM, and GILDERSLEEVE, JJ.

*Louis J. Grant,* for relator. *William H. Clark,* Corp. Counsel, for respondents.

McADAM, J. The relator was tried by the police board on charges preferred to said board that the relator was so much under the influence of liquor as to be unfit for duty at 1:33 P. M., January 1, 1891, at the expiration of his tour of patrol duty. The testimony offered in support of the charges would be sufficient to sustain them, were it not for the explanation offered by the relator, which seems fully sustained by the evidence on his part. The relator went on his post on the day in question at 8 A. M., and his tour ended at 1 P. M. He completed his tour that day in full, and arrived at the station-house 20 or 25 minutes after 1 o'clock. The relator was one of the mounted force, and on the day in question he answered the first call at the station-house at 12 o'clock, and at that time his condition was all right. After that an accident happened; the horse slipped and fell, throwing the relator to the ground, in consequence of which his head was injured. making him unconscious for about five minutes. When he recovered sufficiently to appreciate his surroundings, he found two citizens along-side of him, and they gave him whisky to bring him to. He walked and rode after the accident, and, after completing his tour, returned and reported at the station-house. When he arrived there he was able to sit in a chair, and was compelled to sit there for about two hours. There were radiators in the room, and it was quite warm. While sitting, a sort of dizzy sensation came over him, caused, as he says, by the "hit and the accident," and he fell asleep. It appears that the relator had been on the force between four and five years, and an officer of the same precinct for about two years, and during the whole time he was on the force no complaint of intoxication was ever made against him. The citizens corroborate this story of the relator. It is uncontradicted, seems probable, and we believe it to be true. The explanation takes the sting out of the charge, and shows that the conduct complained of was not a breach of discipline, but the result of an accident. The rule undoubtedly is that the commissioners are statutory judges, and when they find on conflicting evidence their judgment should not be set aside, except in a case where the verdict of a jury would under like circumstances call for the exercise of the supervisory power of the court to correct error and injustice. But there is no such conflict in the evidence here that makes the finding of the commissioners so sacred that it

should not be reviewed. The relator had taken liquor,. and this, combined with the accident which befell him, dazed him, and warranted the captain in making the charge of conduct unbecoming an officer. This left it to the commissioners to determine (subject to review by the courts) whether the relator's excuse was satisfactory or not. The power of the court at general term to review the finding of the commissioners is conceded, while the court of appeals generally accepts their finding, when approved of by the general term upon *certiorari*, as conclusive, (*People* v. *French*, 7 N. Y. St. Rep. 253; 119 N. Y. 493, 502, 23 N. E. Rep. 1058, 1061; 110 N. Y. 494, 18 N. E. Rep. 133; and kindred cases;) and yet that court in *People* v. *French*, 119 N. Y. 493, 23 N. E. Rep. 1058, reversed an order of the supreme court affirming the action of the commissioners in removing one Hogan from the force. In that case the court discriminates between a voluntary intoxication and the taking of liquor "in a sudden emergency, from a commendable motive, and with a reasonable expectation that it will sustain the failing ability to perform duty." In such a case the court holds "that there is no breach of discipline and no conduct unbecoming an officer." Page 498, 119 N. Y., and page 1060, 23 N. E. Rep. If, as is sworn to by the relator and the two citizens, the ground was "slippy," his horse slipped, and he was thrown to the ground and rendered unconscious, and the citizens, to revive him, gave him whisky, which by the subsequent heat of the radiators in the station-house put the relator in a doze, it cannot be truthfully said that the relator was guilty of voluntary intoxication or of conduct unbecoming an officer. The commissioners should not have disregarded the evidence of the two citizens. They were disinterested and unimpeached, not even contradicted, and their story was highly probable. *Lomer* v. *Meeker*, 25 N. Y. 361; *Kavanagh* v. *Wilson*, 70 N. Y. 179. The commissioners, while exercising *quasi* judicial functions, must weigh the testimony offered before them according to legal rules, and give effect to explanations which tend to mitigate or explain away the offense charged. For the failure of the commissioners to give proper effect to the explanation offered, their adjudication must be reversed, and the relator restored. All concur.