In the Matter of the PEOPLE OF THE STATE OF NEW YORK ex rel.
WILLIAM H. BURBY, Relator, v. THE COMMON COUNCIL OF THE
CITY OF AUBURN, N. Y., and Others, Respondents.

*Common council of a city — when members thereof are not disqualified from acting
— proceedings thereof relating to the removal of an officer of such city — duty of
attorneys — stipulation, when a proceeding in an action — when a city attorney
may be removed for malfeasance and misfeasance in office — when errors in the
reception and rejection of evidence will be disregarded under section 2140 of the
Code of Civil Procedure — injury presumed by reason of an attorney's wrongful act.*

If the common council of a city is made by statute the only tribunal that can
take certain proceedings against an officer of such city, the duty that devolves
upon each member of the common council to take part in such proceedings is
absolute, notwithstanding the fact that such member thereof may have formed
such an opinion or taken such action in the premises as would disqualify him
if he were a judge or a juror in an action at law.

The proceedings of the common council of a city, culminating in the removal of
the city attorney, is not a common-law trial with the incident and common-law
rights pertaining to a trial, nor, strictly speaking, is it a trial before the court.
It is an investigation required by the statute to furnish information to the com-
mon council upon which it can act.

The principal duties of an attorney are to be true to the court and to his client;
to keep his client informed as to the state of his business and to keep his secrets
confided to him as such.  The attorney is commissioned by the court to hold
himself out to the world as competent and trustworthy; that the public may
rely upon him; that he has the necessary legal knowledge to represent his
clients in courts of justice and other tribunals, and the integrity which will
protect them from all fraud and wrongdoing on his part.  He must have no
secrets from his clients as to their business.  He must be open and frank with
them, and if he performs any act that is important in their affairs, without first
consulting them, though he may have authority so to do, he should commu-
nicate it to them at the first reasonable opportunity.  Above all, he should be
guilty of no bad faith, double dealing with or suppression of the truth from
them.  He is an officer of the court and the court must at all times be astute to
discover any professional misconduct on his part and take proper action in
reference thereto.

A stipulation made by the attorneys for the parties to an action, that the appel-
lant would abide the decision of the General Term and not appeal to the Court
of Appeals, in consideration that the respondent would not press a motion made
by him to dismiss the appeal and have judgment, is a proceeding in the action,
and by reason thereof the respondent waives a substantial right, and the act of
the city attorney of the appellant, a municipal corporation, in suppressing the
fact of his giving such a stipulation, on being questioned in regard to the action

602 PEOPLE ex rel. BURBY v. COMMON COUNCIL.

Fifth Department, March Term, 1895. [Vol. 85.

by the common council of such municipal corporation, is sufficient to justify his removal for malfeasance and misfeasance in office; and such attorney is liable to removal notwithstanding the fact that such stipulation was made during a former term in office where, during his subsequent term, he was questioned by the common council in regard to the action, and suppressed the fact of the existence of such stipulation.

Under the provisions of section 2140 of the Code of Civil Procedure, errors in the reception or rejection of evidence will be disregarded if the tribunal whose determination is sought to be reviewed had jurisdiction of the subject-matter of the investigation, and had conducted its proceedings in the mode required by law in order to authorize it to make its determination, when there is sufficient competent evidence in the case upon which the tribunal would be authorized to reach the determination which it made.

Injury is presumed where an attorney has violated a substantial right of his client, or when an imposition upon his client is shown.

CERTIORARI issued out of the Supreme Court and attested on the 15th day of September, 1894, directed to the board of common council of the city of Auburn, N. Y., composed of the following persons and officers: John E. McIntosh, mayor; Robert Schicht, Emmett Rhodes, Edward D. Parker, Daniel Bennett, Patrick Hanlon, Charles W. Miles, James H. Hazlitt, Dennis O'Neill, Clarence U. Chedell and William C. Firth, aldermen; Robert J. Carson, city clerk; Gertrude A. Knapp, stenographer of said board, and to Lavern A. Pierce and James Lyon, attorneys, commanding them to certify and return to the office of the clerk of the county of Cayuga all and singular their proceedings, with all things appertaining thereto in relation to the removal of the relator from the office of city attorney of the city of Auburn, N. Y.

*Robert L. Drummond,* for the relator.

*L. A. Pierce,* for the respondents.

WARD, J.:

The relator was first appointed city attorney by the common council of the city of Auburn in April, 1891, to fill a vacancy. In March, 1892, he was again appointed for a full term of two years, and in March, 1894, reappointed. The common council is composed of the mayor and ten aldermen, whose terms of office are two years, commencing the first Tuesday of March after their election. In September, 1892, one Maude Marie V. Parcells commenced an action

in the Supreme Court against the city to recover damages for a personal injury sustained by her by reason of stepping into a hole in a defective sidewalk. The relator, as city attorney, appeared for the city, it defending. The action was tried in May, 1893, at the Cayuga Circuit and resulted in a verdict for the plaintiff for $9,000 besides costs. The relator appealed for the city to the General Term. The trial of the cause occupied several days and the evidence was voluminous, amounting to about 400 pages of type-written matter. The relator was unable to get a copy of the stenographer's minutes until about the first of August. On September twenty-fifth a proposed case and exceptions were served, consisting of sixty pages, and on the nineteenth of November 613 amendments were served to the proposed case, and the case was settled December 7, 1893. The papers then had to be printed and there were some delays in that matter. The case, as settled, did not show that it contained all the evidence given upon the trial. The appeal was noticed for the January General Term, 1894; the printed case not having been served, the plaintiff's attorney threatened to make a motion to dismiss the appeal under the rules for the want of such service. Some difficulty occurred between the attorneys in regard to such delay, and the relator being pressed gave a stipulation providing that, if the printed cases were not served on or before January fifth, the appeal might be dismissed and judgment rendered for the plaintiff. The case was put upon the day calender and reserved for January tenth. The printed cases were not satisfactory on account of some mistake in the printing, and were not served, and on January eighth the plaintiff's attorney served a notice of motion to dismiss the appeal and for judgment to be heard on the twelfth. The plaintiff's attorney insisted upon the motion, unless the relator would stipulate to abide the judgment of the General Term and not appeal the case to the Court of Appeals, but with permission to the plaintiff to appeal in case she were defeated at the General Term. The relator insisted that he did not expect to go beyond the General Term and gave the stipulation binding the city not to appeal to the Court of Appeals. The stipulation was not filed and the relator gave no notice thereof to the common council, although he claims to have told individual members of the council. In March, 1894, the General Term handed down its decision affirming the judgment.

After the relator had been reappointed the second time, rumors reached members of the common council of the stipulation not to appeal to the Court of Appeals, and the subject came up at meetings of the council, and the relator in effect denied that he had executed such a stipulation, and made a report to the common council under date of April 16, 1894, stating the judgment of affirmance, and quoting from the opinion of the court that "the jury was justified from the evidence in finding that the plaintiff was free from negligence contributory to her injuries," and that "the verdict seem to be fully sustained from the evidence." The report continued that the relator had advised settlement for an amount less than the ultimate recovery, which the common council had declined to consent to, and again advised that the judgment be paid, as there was no possible chance of the city's succeeding in the case, and concluded as follows : " An appeal to the Court of Appeals means only additional cost and expense. The city will be beaten *without question*. I have heard rumors that the city could not appeal. It has been my policy to pay but little attention to street gossip or the newspapers, whose correspondents have personal reasons to misrepresent and distort the truth, and will only say that, if your honorable body sees fit to direct that an appeal from the judgment of the General Term be taken in this case, there is no reason why the same should not be done. *Nothing that I have done can prevent the same.*"

There was nothing in this report to indicate that the stipulation had been given. After that the city council, by resolution, directed the relator to take the necessary steps to appeal the cause to the Court of Appeals. A committee of the common council was appointed to investigate the matter, W. C. Firth and Clarence U. Chedell, members of the common council. They reported under date of June 11, 1894, the execution of such stipulation, and charged the relator with neglect and violation of duty as attorney of the city in regard to his proceedings in that action and the giving of such stipulation, and with suppressing the existence of the stipulation from the common council with intent to mislead and deceive. A motion was afterwards made at a Special Term of this court to set aside and annul the said stipulation, the relator taking part in the preparation of the papers for such motion, and being present

PEOPLE ex rel. BURBY v. COMMON COUNCIL.  605

Hun.]          FIFTH DEPARTMENT, MARCH TERM, 1895.

and assisting when the motion was made, and made an affidavit in which he states that he signed the stipulation to save delay, and believing that the only question in the case was contributory negligence, and that the decision of the General Term would not be reversed by the Court of Appeals, and adds "that deponent had no authority from the common council of the city of Auburn to sign such stipulation, but did it believing it to be for the best, and that there was no consideration for said stipulation."

The mayor and other members of the common council made affidavits of which the relator had knowledge, which were read upon the said motion, and were in effect that they did not know of the existence of such stipulation, and that the relator had no authority to make it. On June 11, 1894, at a meeting of the common council duly called, written charges were preferred against the relator, which were served upon him on the thirteenth of June, and he was notified to attend at a meeting of the common council for the twenty-eighth of June. These charges in effect accused the relator of malfeasance and misfeasance in his office as city attorney with respect to the management of the said action ; with negligence in regard to the same ; with the giving of the said stipulation without authority ; with making a false report to the common council in regard to the same, and which report suppressed the fact of such stipulation, and with falsely stating that there was nothing to prevent the appeal to the Court of Appeals when he knew of the existence of the stipulation which prevented it, and with improper conduct and bad faith toward his client, the city of Auburn, in the said action, and for giving advice to it upon a false or assumed state of facts.

By section 44, title 5, of the charter of the city (Chap. 53 of the Laws of 1879) it was provided that "The city attorney shall be the legal adviser of the common council and of the several departments of the corporation ; shall prepare all legal papers for the city ; have the management of all its law business, and perform such other duties as the common council may require."

The 27th section, title 4, of the charter provides as follows : "No person appointed under the provisions of this act shall be removed from office except by a concurring vote of two-thirds of all the members of said council, unless for malfeasance or misfeasance in office, when, after an opportunity to be heard before said council

## 606 PEOPLE ex rel. BURBY v. COMMON COUNCIL.

Fifth Department, March Term, 1895. [Vol. 85.

upon a notice of two weeks, such person may be removed by a concurring vote of a majority of said members."

The relator answered, denying these charges, and proceedings were had thereon before the common council in the summer of 1894, and testimony was given under oath by witnesses, documentary evidence introduced, and the relator sworn in his own behalf. Counsel appeared for the prosecution and for the relator before the common council, and the forms of trial in courts was observed as to the proceedings, and the relator had full opportunity of being heard in his defense. The mayor presided, and the common council made rulings as to the admission or rejection of evidence. The relator was found guilty by the common council by a majority vote of the charges and removed from office, and upon his application a writ of certiorari brings the subject before us.

The relator attacks the jurisdiction of the common council, in this, that he had not received the notice required by statute, of fourteen days, of the charges against him. This contention is not well founded, as the proof shows that he had the fourteen days of notice of the substance of the charges upon which he was ultimately convicted. The amendments of one or two of the charges, which occurred during the progress of the investigation, were but an amplification of the original charges, and made in his presence, and an adjournment of several days was taken by the common council to give him an opportunity to meet the amended charges, and the relator had every reasonable opportunity to do so.

He further assails the jurisdiction because two of the common council (Firth and Chedell), who voted upon the charges and took part in the proceedings, had made a report to the common council upon an investigation made by them, substantially preferring the charges that the council subsequently made. The common council is created by statute the only tribunal that can take the proceedings against the relator for the matter alleged against him. It is, therefore, absolutely necessary that this body take this action, or it cannot be taken at all. Consequently, the duty that devolved upon each member of the common council, to take part in the proceeding, was absolute, notwithstanding he may have formed such an opinion or taken such action in the premises as would disqualify him if he were a judge or juror in an action at law.

In *Matter of Ryers & Others* v. *Commissioners of Audits of Accounts* (72 N. Y. 1, 11, 12, 13) the county judge of Richmond county had made an order appointing commissioners in a proceeding to drain lands under a statute, and lands in which the judge was interested, he being the only authority under the statute that could appoint such commissioners. The point was made that the judge was disqualified from making the appointment on account of being an interested party, and the Court of Appeals, after citing many authorities, reaches the conclusion " that it must be the law, from these cases, that where the judicial power has been confided to one judge, and, if he should fail to act, there would be no means of proceeding in the matter, though interested, he may take such cognizance of the case as is absolutely necessary, so far that the party shall not be without remedy."

This we understand to be confined to cases where the judicial officer has not such an interest in the cause or matter that the result must necessarily affect his personal or pecuniary interest, or where his interest is minute and he has so exclusive a jurisdiction by Constitution or statute that his refusal to act in the cause or matter will prevent any proceeding in it, then he may act so far as that there may not be a failure of remedy. This is the rule as to judicial officers. The rule would be more liberal still in this case. The common council in this proceeding was, strictly speaking, not a court, nor were its members judges. The proceeding was not a common-law trial with the incident and common-law rights pertaining to the trial, nor, strictly speaking, was it a trial before a court. It was an investigation required by the statute to furnish information to the common council upon which it could act. (*People ex rel. McCarthy* v. *Board Police Commissioners*, 98 N. Y. 334, 335; *The People ex rel. Lee* v. *Doolittle & Others*, 44 Hun, 293; *People ex rel. Flanagan* v. *Board Police Commissioners*, 93 N. Y. 102, 103.)

These members of the common council had no pecuniary interest in the result of the proceedings, and were not in any sense parties to it further than to discharge the duties imposed upon them by law. We must hold that the common council had jurisdiction, and that the authority conferred upon it by the statute in relation to the subject-matter has been pursued in the mode required by law in order to authorize them to make the determination.

608 PEOPLE ex rel. BURBY v. COMMON COUNCIL.

FIFTH DEPARTMENT, MARCH TERM, 1895.          [Vol. 85.

The remaining questions are whether, under section 2140 of the Code of Civil Procedure, in making their determination, any rule of law affecting the rights of the relator has been violated to his prejudice, and whether there was any competent proof of all the facts necessary to be proved to authorize the making of the determination; and, if there was such proof, whether there was, upon all the evidence, such a preponderance of proof against the existence of the fact alleged against the relator as constituted malfeasance or misfeasance, or both, as that a verdict of a jury affirming the existence thereof in the Supreme Court would be set aside as against the weight of evidence.

The relator claims that, assuming that the acts charged against him have been shown by competent evidence, they constitute neither malfeasance nor misfeasance. What do these terms mean when considered in connection with the relation of attorney and client, and the purpose of the statute in clothing the common council with the power of removal? Light can be gathered upon this subject from the reciprocal duties and obligations of the client and attorney.

Malfeasance has been defined in Bouvier's Law Dictionary to be "The unjust performance of some act which the party had no right or which he had contracted not to do." And the same authority defines misfeasance as the performance of an act, which might lawfully be done, in an improper manner in which another person receives an injury. And the Imperial Dictionary defines malfeasance as "In *law* the doing of an act which a person ought not to do; evil-doing; wrong; illegal deed;" and defines misfeasance to be "In *law* a trespass, a wrong done, also the improper performance of some lawful act," and cites Wharton.

The true relation of client and attorney has been defined to be as follows: "The principal duties of an attorney are to be true to the court and to his client; *to keep the client informed as to the state of business;* to keep his secrets confided to him as such."

To which may be added that the attorney is commissioned by the court to hold himself out to the world as competent and trustworthy; that the public may rely upon him; that he has the necessary legal knowledge to represent his clients in courts of justice and other tribunals, and the integrity which will protect them from all fraud and wrongdoing on his part. He must have no secrets from

PEOPLE ex rel. BURBY v. COMMON COUNCIL. 609

Hun.]                 FIFTH DEPARTMENT, MARCH TERM, 1895.

his clients as to their business. He must be open and frank with them, and if he performs any act without first consulting them, that is important in their affairs, though he may have authority so to do, he should communicate it to them at the first reasonable opportunity. Above all, he should be guilty of no bad faith, double dealing with or suppression of the truth from them. He is an officer of the court, and the court must at all times be astute to discover any professional misconduct on his part and take proper action in reference to it.

We have no doubt but that the matters charged, if true, constitute both malfeasance and misfeasance under the conditions of this case. The recital of those facts to some extent appear above. Without the knowledge of the common council the relator did stipulate that there should be no appeal so far as the city was concerned to the Court of Appeals.

This was a most important step and barred the city of its right of hearing in the court of last resort in regard to a judgment against it of a large amount. The attorney had the power to make this stipulation under the charter of the city and by virtue of his powers as a general attorney in the action.

The stipulation not to appeal was a proceeding in the cause, and by reason thereof the plaintiff in the action referred to waived a substantial right, viz., to move to dismiss the appeal under the rules when the defendant was in default. And see *Smith* v. *Barnes & Others* and cases cited (29 N. Y. Supp. 692).

The relator testified before the common council and produced two or three witnesses to confirm his statement that at an executive session of the common council authority was given him to take such action with reference to appeals in the case as he saw fit. This was disputed by other evidence, and was, therefore, a question of fact for the common council to determine, and it was upon this question that affidavits prepared by the relator or under his supervision, and his own affidavit showing that no such authority was given, were introduced properly in evidence. If he had such authority, why did he deny it in his affidavit? When he made his report to the common council as to the condition of the action of Maude Marie V. Parcells he was directly called upon to state *whether he had taken any*

610  PEOPLE ex rel. BURBY v. COMMON COUNCIL.

Fifth Department, March Term, 1895.  [Vol. 85.

*step in that action* to prevent the city from appealing to the Court of Appeals. It was his duty to have frankly reported that fact to the common council. Instead of so doing he avoids the question, and distinctly says he had done no act that would prevent the city from appealing to the Court of Appeals. We find nothing in the evidence to excuse or even palliate this feature of his report, and his wrongdoing lies more in the fact that he sought to suppress from his client, the city, the knowledge of the important fact of the execution of this stipulation and to induce them to act without that knowledge. He substantially admits he made, in the presence of the common council, the statements that he had never signed any stipulation which prevented the city from carrying the Parcells case to the Court of Appeals; that there was no such stipulation; that if he had signed it he had done the act of a seven-year-old boy, and was not fit to be the city attorney; that there was no occasion for making any such agreement, and if any such stipulation existed it was a forgery, etc., and which seems to show conclusively that the relator was seeking to suppress from the city the fact of the execution of the stipulation.

The relator makes the point that the common council had no authority to try him, because the acts charged as malfeasance and misfeasance were committed by him during a former term of office. It is true that the stipulation not to appeal to the Court of Appeals was made during the term of the relator's office that expired in March, 1894, but the report made by him as to his proceedings in the case, and the suppression of facts and false statements in relation to the same, were made after the commencement of the term from which he was removed, and the whole matter was thus carried into that term. This question arose upon the impeachment trial of Judge Barnard before the Court of Impeachments at Saratoga upon a motion to strike out the charges of certain offenses alleged to have been committed by the judge during a prior term of office. The judge had been re-elected, and his counsel claimed that such re-election had condoned all prior offenses, and that he had come anew into the possession of his office approved by the judgment of the People and certified as capable and worthy to occupy the position and discharge the duties of a justice of the Supreme Court.

In Volume 1, Trial of Barnard in Court of Impeachment (p. 147, *et seq.*), the point was overruled by the court and he was convicted as well of offenses committed during a prior term as during the term then existing.

The relator strongly urges that grave errors were made by the common council in admitting and rejecting evidence to his injury. We will not attempt to pass over the rulings in detail, but will notice some of the most important ones, that our position may not be misunderstood in regard to them.

In the proceedings of the common council a resolution appears, and was adopted under objections, whereby the council resolved to take judicial notice of and to consider all statements made by the relator in both open and executive session with reference to these stipulations and matters connected therewith, and particularly to certain statements enumerated (which, as appears above, the relator substantially admitted). This proceeding was error. The common council could not act upon their own knowledge (*People ex rel. McAleer v. French*, 119 N. Y. 502), and had it not been substantially cured by the admission of the relator, when sworn, that he had made those statements, substantially, a grave question would arise as to our duty with regard to this error.

The proceedings of the common council also show that the report of the aldermen above referred to was received under objection in evidence. It was, doubtless, meant to be received as a part of the history of the investigation, and not as evidence strictly, as it was not, in any sense, evidence, and, as such, it was error to receive it; but as the report only sets forth what was substantially proved by competent evidence the relator was not seriously prejudiced thereby.

This court held (*The People ex rel. Mizner v. Hair & Others*, 29 Hun, 125) that decisions as to the admission and rejection of evidence cannot be reviewed by certiorari under section 2140.

To the same effect is *The People ex rel. Bd. of Supervisors v. The State Board of Assessors* (22 Wkly. Dig. 453), being both General Term decisions of the old fourth department.

In *People ex rel. Schabacker v. The State Assessors* (47 Hun, 451) the General Term of the third department, speaking through Judge Parker in referring to the rule laid down in the last case

612 PEOPLE ex rel. BURBY *v.* COMMON COUNCIL.

Fifth Department, March Term, 1895.          [Vol. 85.

cited, says : " I am not prepared to adopt fully the rule laid down by the court in that case. Such a rule would render a court powerless to review the arbitrary action of a board like the State Assessors in refusing to receive competent and material evidence bearing upon the issue to be determined,    *    *    *    and an examination of the decisions of the Court of Appeals, which resulted in establishing the rule which the framers of the Code of Civil Procedure incorporated in subdivision 3 of section 2140, leads me to the conclusion that a refusal to receive evidence, absolutely essential to the protection of either of the parties, would constitute an erroneous ruling of law affecting the rights of the parties within such subdivision."

In *People ex rel. Sutliff* v. *The Board of Supervisors of Fulton County* (74 Hun, 251, 253) the court says : " Although the court may review the action of supervisors in extreme cases, in improperly receiving or rejecting evidence offered on the audit of a claim against the county (citing the last case, 47 Hun, 450), yet, ordinarily, an error of the board of supervisors or its committee in receiving incompetent evidence will cause a reversal of its determination " (citing the cases in 29 and 74 Hun and in 22 Wkly. Dig., *supra*).

The true rule to be gleaned from these cases, and which is consistent with the purposes and spirit of section 2140 of the Code, is that errors in the reception or rejection of evidence should be disregarded if the tribunal had jurisdiction of the subject-matter of the investigation, and had conducted its proceedings in the mode required by law in order to authorize it to make the determination, where there was sufficient competent evidence in the case upon which the tribunal would be authorized to reach the determination which it made.

The competent proof to sustain the charges given upon the hearing before the common council was clear and conclusive, and was so independent of and notwithstanding the errors committed as to the reception of evidence.   Had none of the errors with regard to reception or rejection of evidence occurred, the result must have been the same, and consequently the relator was not prejudiced by any such errors.

The misconduct of the relator does not seem to have been corrupt, nor does it appear that he obtained any pecuniary advantage

from it. Mistakes occurred during the progress of preparing the appeal of a serious nature, such as omitting the statement that the case contained all the evidence and proceedings, and in permitting the city to be in default in serving the printed cases in time, and other defaults which the record discloses, but stipulations extending time were executed on both sides, and considerable excuse was shown for the delays in consequence of the voluminous nature of the evidence, and in getting the stenographic minutes, and in settling the case. The relator, instead of stipulating away the rights of his client when he got into difficulty at the General Term, should have disclosed the facts, and applied to the courts for relief, which he undoubtedly would have obtained. Instead of doing this he obtained temporary relief from the other side at the sacrifice of his client's interests, and all of his troubles have grown out of that mistake, and in the fatal attempts to prevent its coming to the knowledge of his client. The relator insists that, notwithstanding all this, no injury came to the city. Injury is presumed where a substantial right of the client is violated, or an imposition upon the client is shown.

From these conclusions it follows that the determination of the common council in removing the relator should be affirmed, and the writ of certiorari dismissed.

