PEOPLE OF THE STATE OF NEW YORK ex rel. FRANCIS MALLON, Relator, *v.* THEODORE ROOSEVELT and Others, Composing the Board of Police Commissioners of the Police Department of the City of New York, Respondents.

*Police commissioners of New York city — their determination upon a question of fact will not be reversed unless clearly against the weight of evidence.*

The Appellate Division will not reverse a determination of the board of police commissioners of the city of New York upon a mere question of fact, where one, at least, of the commissioners had the advantage of observing the conduct of the witnesses while giving their testimony, unless the findings of fact made by the commissioners are so clearly against the weight of evidence that the court would be obliged to set aside a verdict of a jury if rendered to like effect in the matter.

PATTERSON and RUMSEY, JJ., dissented, holding that, upon the facts, the dismissal of the police officer by the board of police commissioners was not justified.

CERTIORARI issued out of the Supreme Court and attested on the 4th day of September, 1896, directed to Theodore Roosevelt and others, composing the board of police commissioners of the police department of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceedings relating to the removal of the relator from the police department of the city of New York.

*Stephen S. Blake,* for the relator.

*T. Connoly* and *Terence Farley,* for the respondents.

PARKER, J. :

We have presented on this review questions of fact only. The evidence is capable of such a presentation as to at least raise a doubt whether the commissioners rightly decided those questions. In such a situation we are to remember that the commissioners, or at least one of them, had the advantage of observing the conduct of the witnesses while giving their testimony, and to bear in mind the rule that the findings of fact made upon a trial will not be interfered with unless so clearly against the weight of evidence as would compel us to set aside a verdict of a jury. Thus proceeding, we are not called upon to interfere with the action of the commissioners in dismissing the relator from the force.

The writ should be dismissed, with costs.

VAN BRUNT, P. J., and WILLIAMS, J., concurred; PATTERSON and RUMSEY, JJ., dissented.

PATTERSON, J. (dissenting) :

The relator, a member of the police force of the city of New York, was dismissed from the force by the commissioners of police on the 12th day of May, 1896, and the action of the commissioners in so dismissing him is brought up for review on certiorari. The charges made against him were neglect of duty and conduct unbecoming an officer, and that he was off his post while on duty. The specification of the first charge was that he was found, on the evening of April 2, 1896, during his tour of patrol duty, so much under the influence of liquor as to be unfit to perform police duty. The second charge seems to be involved in the first. The evidence before the commissioners in support of the charge did tend to establish the fact that the relator was under the influence of liquor at the time referred to in the charge. The captain of the precinct testified that he saw the relator, on the date mentioned, on the street staggering over the sidewalk, and unable to give an intelligent answer to a question put to him as to what he was doing there; that he took the relator to the police surgeon's house and had him examined by the surgeon, who said that he was under the influence of liquor; that his face was flushed and he showed symptoms characteristic of an intoxicated person. The sergeant of police testified that he was at the station house when the relator was brought in by the captain, and

that the relator was then under the influence of liquor. The police surgeon, McGovern, examined the relator's pulse, his walk, his talk and his eyes, and, from his observation, and also from conversation with the relator, he (the surgeon) made the charge that the relator was incapable of performing duty as a result of alcoholism. Roundsman Finlay testified that, on the occasion in question, he saw the relator at the police station; that his face was flushed, his gait unsteady, his breath smelt sour, and he seemed to be under the influence of alcohol.

All this evidence was sufficient to indicate an intoxicated condition of the relator at the time mentioned, but, in defense, the relator testified that he was a temperate man, that he was not a drinking man, and that on the occasion in question he was seriously ill; that for five months or more he had suffered from a very serious illness; that on the day in question he had taken a prescription, and was told by the druggist who made it up to eat no food for twenty-four hours; that on the morning of that day, at eleven o'clock, he took some of the medicine, went to bed, and that, on rising, he went on to the street and felt dizzy, and then went to a drug store and drank some soda, and started to the station house with the intention of reporting sick, but concluded to go on post, and that he patrolled his post with a probationary patrolman until seven o'clock; that in the neighborhood of eight o'clock he was taken with cramps and went to Park avenue, where he saw a janitor of a building who gave him some blackberry brandy; that he was then suffering greatly from his disease and could scarcely tell what the man was talking about; that he then started to go to Dr. McGovern's office (which would account for his being off his post), when he met two officers, the probationary officer and Officer Doane; they called his attention to his condition, and he then stated what was the matter with him; he then met Captain Deane, who asked him where he was going, and he told him he was going to the doctor's; they went to the doctor's, but he did not hear the conversation between the captain and the doctor; he went to the station house, was taken to the front of the desk and the captain told him to turn around. He swears that he was never drunk in his life, and that his condition then was attributable to the very serious malady from which he was suffering, and that he did not take a single drop of intoxicating liquor

that day or night, except the mouthful of what the janitor gave him. In corroboration of his story, James Post, the probationary officer, stated that he met the relator as he testified, at about a quarter to eight o'clock, that the relator was not drunk at that time, but that he was ill and suffering — apparently. Patrolman Butler testified that he saw the relator at about ten minutes to six at the station house, and that then the relator said he was terribly sick, as weak as a cat, that his disease was troubling him again, and that he had not eaten anything all day. Officer Goll saw the relator at five minutes after six o'clock on the evening of April second, and the relator then told him he was suffering and had not eaten anything all day; that he was not at that time under the influence of liquor. The witness Mullen, who was the janitor referred to by the relator, testified to the relator coming to the flat house of which he was the janitor, as stated by the relator, complaining of being ill; that he had a sick and haggard and worried look; that the witness thought the relator had diarrhœa, and that he went up stairs and brought him down blackberry brandy and gave him a mouthful of it, and that the relator said he was going to the station house; that he was very sick; that, so far as the witness could tell, the relator was sober, but very sick, and did not have the appearance of an intoxicated person. Patrolman Winfield, at about twenty-five minutes past eight o'clock, saw the relator, but he looked very sickly, and looked pale. At about the same time Patrolman Doane saw him, asked him where he was going, and he said he was going to the doctor's; that he was sick and was going to report sick; that he did not see any evidence of intoxication. Dr. O'Donohue testified that the relator came to him with a prescription which he said he saw in a newspaper, which was a specific for the malady the relator claims to have suffered from. He swore that he approved of that prescription, but he did not remember treating him for that specific ailment, but the relator did mention to him what that ailment was; that he regarded the prescription a good one, and that the relator stated he had the ailment of which he complained, and that he took the remedies he swears he took and had fasted all day. This witness also says the conditions testified to by the relator would produce mental and physical weakness like that arising from alcoholic drink. He testifies that he had known the relator for eight or nine years, and that

he was a sober man, but that two or three years before he had a suspicion only that on one occasion he saw the relator under the influence of liquor, but it was only a suspicion.    It also appeared in evidence that the relator, when he was accused of being intoxicated, at the police station, resented the charge, and also that the police surgeon, McGovern, fifteen days before April second, was told by the relator that he was suffering from the disease referred to, and that he (McGovern) prescribed a certain remedy which was the very one the relator told him he was already taking, and that his (McGovern's) record showed that seventeen days before the charge was made the relator was suffering from the disease.    The uncontradicted evidence, therefore, seems to establish that this relator was ill at the time mentioned in the charge and specification of that charge. It is also uncontradicted that the janitor of the building he went to on the second of April gave him the blackberry brandy, and that, his condition being such as he described, the blackberry brandy thus taken medicinally might have the effect of inducing a condition of intoxication.

The question, therefore, is as to whether the relator was properly convicted of the charge under such circumstances.    It may be conceded that where an offense is established, the sufficiency of the excuse is a matter to be determined by the commissioners alone, but a charge of neglect of duty and incapacity to perform it by reason of intoxication must be established by evidence which will justify the conclusion that that intoxication was voluntary.    The evidence points directly to the conclusion that the relator took the blackberry brandy merely as a remedy or to alleviate his condition of feebleness.    It ought not to be imputed to him as an offense when he thus took it innocently and for a proper purpose.    As was said in the case of *People ex rel. Brady* v. *French* (11 N. Y. St. Repr. 577) : " The charge made against the relator contemplated voluntary misconduct as distinguished from real misfortune.    Such misconduct this evidence did not tend to establish, for it proved him to have been subjected to an affliction requiring the aid of a stimulant without any voluntary action producing it on his part.    The case in this respect is entirely exceptional and not attributable to that class where the misconduct or voluntary action of the party himself is the cause of intoxication."    The case is not within the *Masterson Case* (110

N. Y. 494), where it was said that where the neglect of duty has been proved, " the sufficiency of an excuse therefor presents no question of law or fact for the courts, but is addressed solely to the judgment and discretion of those who are primarily charged with the duty of maintaining the discipline and efficiency of the force."

The real question is whether the relator was guilty of the offense, and that does not depend alone upon the mere fact of intoxication. In the case of *People ex rel. McAleer* v. *French* (119 N. Y. 504) the court said : " Before a police officer can be dismissed from the force for intoxication, it must be shown that the intoxication was of such a character as to be an offense against the rules ; that it was conscious, voluntary, blamable and in some way due to his fault. In the absence of any other proof, or of any explanation, the mere fact of intoxication might establish the offense, because it would have to be assumed that the officer voluntarily brought himself into that condition.    But if it should appear that the officer was, by force, compelled to drink intoxicating liquor, or that he had taken it when it was so disguised that he did not know its character, or in good faith when it was prescribed by a physician for some bodily ailment, and that thus he became intoxicated, no blame would attach to him ; he would be guilty of no offense, and would in no way be in fault ; and then he could not be convicted or dismissed from the force on account of such intoxication."    In the case of *People ex rel. Hogan* v. *French* (119 N. Y. 495) it appeared that the relator had been discharged from the police force upon a charge of intoxication.    He was taken sick while on duty, became faint and ill, reported his sickness, was advised to report sick, but determined to stay on duty ; he took a drink of brandy and peppermint to relieve his illness, and, not being accustomed to it, some degree of intoxication followed. The court in its opinion says that the General Term with *undisguised reluctance* affirmed the dismissal upon the authority of the *Masterson* case, but that they misunderstood the scope and meaning of that case and viewed it as establishing a rigid and arbitrary rule which left the action of the police commissioners practically without restraint.    The facts of the *Masterson* case are then reviewed and the propriety of the decision upon the facts was declared.    In the case now before us there is no room for any other inference than that this relator was really ill, suffering from the disease he

said he was afflicted with; that he persisted in the performance of his duty, but became very feeble and faint and ill and that he innocently took a very small quantity of an intoxicating drink only as an alleviative. Voluntary and blameful intoxication is a necessary ingredient of the offense. The evidence given by and on behalf of the relator on the trial completely exonerates him from both charges.

The proceedings of the commissioners should be annulled and the relator reinstated.

RUMSEY, J., concurred.

Writ dismissed, with costs.