(81 Misc. Rep. 453.)

## O'NEILL v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County. June, 1913.)

1. MUNICIPAL CORPORATIONS (§ 192*)—OFFICERS—COMPENSATION DURING SUSPENSION.

Where the chief inspector of the bureau of buildings in the city of New York was suspended from office, pending preparation of charges of an offense constituting not only a violation of the city charter, but also a misdemeanor, and where he was not allowed to perform his duties until he was voluntarily restored to duty without being found guilty, he was entitled to his salary for the time he was suspended, though his reinstatement was not procured by mandamus.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 530–532; Dec. Dig. § 192.*]

2. MUNICIPAL CORPORATIONS (§ 192*)—OFFICERS—TRIAL ON CHARGES—DECISION OF BUREAU PRESIDENT.

Where charges preferred against the chief inspector of the bureau of buildings in the city of New York were referred to the superintendent of buildings appointed to try the same, a decision of the borough president that the inspector be fined a sum equivalent to the salary due him for the time of his suspension was without legal effect, though the superintendent, without making any finding of his own, notified the inspector of such decision.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 530–532; Dec. Dig. § 192.*]

Action by Martin H. O'Neill against the City of New York for reinstatement in office. Judgment for plaintiff.

John J. Kean, of Brooklyn, for plaintiff.

Archibald R. Watson, Corp. Counsel, of New York City (James D. Bell and Charles J. Druhan, both of Brooklyn, of counsel), for defendant.

KELLY, J. [1] Upon the agreed statement of facts, I think the plaintiff is entitled to judgment. He was suspended from his office as chief inspector in the bureau of buildings on July 15, 1909, "pending the preparation of charges," which charges he was informed would be "submitted at the earliest possible moment." He was paid his full salary for July, but after July 31st and until December 22d, his salary was withheld. He was not furnished with a copy of the charges against him until November 26, 1909, a lapse of four months, despite continuous application for same. He was not allowed to perform his duties until December 22, 1909. On December 22d, he was "restored to duty." He never was found guilty of the charges preferred against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

him by any one. The superintendent of buildings, in his notice to plaintiff under date of December 22d, does not in any way intimate that he (the superintendent) has adjudged the plaintiff guilty of the charges against him, and the superintendent was the tribunal appointed to determine this question. On the contrary, the superintendent restores the plaintiff to his office and directs him to report for duty at the usual hour. All this is inconsistent with any finding or determination that plaintiff had been in any way derelict in the performance of his duties. The charge made against him, if true, constituted not only a violation of the charter, but was a misdemeanor as well. It was malum per se under section 1533 of the charter (Laws 1901, c. 466). It seems to me that the action of the superintendent in restoring the plaintiff to his office was virtually an acquittal, an exoneration of the plaintiff. It cannot be that the superintendent would restore to duty a man guilty of the acts charged against the plaintiff.

[2] But, it is said, the letter of the superintendent dated December 22, 1909, notifies the plaintiff that the borough president after carefully reviewing the evidence in the case has reached a decision that the plaintiff be fined a sum equivalent to the salary due him. The inevitable answer is that the borough president had no duty to review the evidence, or reach any decision, or to fine the plaintiff. The authority and the duty and the responsibility for all these things are with the superintendent of buildings. The superintendent carefully omits any statement that he has made any finding against the plaintiff, nor is it claimed that he made any such finding. Nor does the borough president suggest that he has convicted the plaintiff of anything. True the borough president is reported to have decided that plaintiff should be fined—but fined for what? Surely not because the commissioners of accounts stated back in July that plaintiff had done wrong, but omitted to frame or present charges until November 20th, and then failed to sustain them. This might warrant fining the commissioners, but what possible ground does it afford for fining the plaintiff?

The learned corporation counsel suggests that plaintiff should have procured reinstatement by mandamus. This is not a prerequisite. The superintendent restored plaintiff to his office voluntarily. And on the argument suggestion was made that the facts may have been suspicious, although not rising to the standard of proof. There is no warrant for the last suggestion. There is no intimation that there was any proof whatever. The reinstatement of the plaintiff negatives this suggestion in the strongest possible way. And "suspicion" or charges made without foundation should not be made a basis of fining a man five months' salary. There is no such procedure laid out in the charter.

Judgment for plaintiff.