(162 App. Div. 345)

PEOPLE ex rel. BARAN v. WALDO, Police Com'r.

(Supreme Court, Appellate Division, Second Department.  May 15, 1914.)

1. MUNICIPAL CORPORATIONS (§ 185*)—POLICE—REMOVAL—GROUNDS.
    Upon certiorari to review the action of the police commissioner in removing an officer, evidence *held* insufficient to show his intoxication or that he was guilty of conduct unbecoming an officer.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509;  Dec. Dig. § 185.*]

2. MUNICIPAL CORPORATIONS (§ 186*)—POLICE—SALARY—RIGHT TO.
    Salary is an incident to office, and hence a policeman reinstated upon certiorari brought to hearing a year after removal is entitled to salary, though the city, during the interim, had no benefit of his services.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. · §§ 510–517;  Dec. Dig. § 186.*]

3. MUNICIPAL CORPORATIONS (§ 185*) — POLICE — REINSTATEMENT — RIGHT TO COSTS.
    As the allowance of costs upon certiorari to review the determination of an inferior tribunal rests in the discretion of the court under Code Civ. Proc. § 2143, none will be allowed a policeman reinstated upon certiorari, where he did not bring his petition to hearing until more than a year after removal, where he covered his salary for that time, though the city had no benefit of his services.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509;  Dec. Dig. § 185.*]

Proceeding by the People, on the relation of Frank H. Baran, for a writ of certiorari to review the determination of Rhinelander Waldo, as Police Commissioner of the City of New York.   Determination annulled, and relator reinstated, without costs or disbursements.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Jacob Rouss, of New York City, for relator.

James D. Bell, of Brooklyn (Frank Julian Price, of New York City, on the brief), for respondent.

BURR, J.   Relator has been found guilty of conduct unbecoming an officer, and intoxication, and removed from the force.   The first specification of the charge is that on November 19, 1912, between 3:30 and 3:40 in the afternoon, he was arrested at Eighty-Sixth street and Fifth avenue in the borough of Brooklyn, on account of using abusive and insulting language to a passenger while riding on a street car.   The second specification is that he was intoxicated at the station house upon the same day.

The offense, if any, was committed while relator was off duty and in citizen's clothes.   Rose Scrivenor, called before the commissioner, testified that she was a passenger in the car on the day in question; that defendant was sitting next to her; that he dropped to sleep and fell over upon her, and when she pushed him away he indulged in mutterings, during which he made use of insulting and abusive language. No one in the car seems to have heard this language, and the conduc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tor, called as a witness, denies that he heard defendant address her at all. Although she made the complaint upon which he was arrested, it appeared that on the succeeding day, while denying any recollection as to what took place in the car, he apologized to her, and the complaint was withdrawn. She testified with manifest reluctance, and refused to say that his speech or appearance at that time indicated intoxication. The police captain, who was in the station house when relator was brought in, testified that at that time there was the odor of alcohol upon his breath; that his face was pale, not flushed, eyes dilated and glassy, utterance slightly thick but coherent, and his gait a little unsteady. He expressed the opinion that relator was then under the influence of "some alcoholic or some stimulants of some kind"; and his testimony was to some extent corroborated by that of two lieutenants of the force, who were also on duty at the time. Each of the latter testified, however, that they had known relator for 18 or 19 years, and had never known him at any other time to be under the influence of liquor or to be other than a peaceable and sober man. A police surgeon, who examined relator a little after 5 o'clock on that afternoon at the station house, testified that he was "somewhat under the influence of some alcoholic intoxicant." This constituted the evidence in chief for the police department.

Relator, testifying in his own behalf, said that he was relieved from patrol duty at 8 o'clock in the morning, and went home, where he arrived about nine; that he was not feeling well; and that he drank a cup of coffee and ate a piece of toast, then went downtown, thinking that perhaps the air would do him good. He made some purchases, and then went to see a friend of his, a lawyer with an office in the Temple Bar Building. Notwithstanding his ill health, he testified that for lunch he ate pork and sauerkraut, and he stated that while in the lawyer's office he was affected with pains in his stomach, and was advised to stop in and see his physician, and then go home. He stopped at the office of his physician at about 3 o'clock, who then gave him "some stuff in a glass," which he drank, and after a few minutes a pill, and told him to go home as soon as he could. He also testified that he had partaken of no alcoholic drinks, other than such as might have been in the medicine his physician gave him, for more than 24 hours preceding the date named. He also testified that he had no recollection of what occurred in the car. His wife testified that for three months he had been under a physician's care for illness of a gastric nature; that she saw him about half past 5 that evening in the station house; that he was not then intoxicated; and that she had never seen him under the influence of any liquor. Several witnesses were called as to relator's general good character. A clerk in the office of his attorney testified that, on the afternoon in question relator called at the office, his principal at that time was absent; that relator sat talking with the witness for some time; that he complained of having severe cramps and of not feeling well; and that he advised him to see a surgeon, and then go home. He also testified that at that time relator was perfectly sober. Dr. D. Dewaltoff, who had known relator for 19 or 20 years and had been his family physician, testified that he did come

into his office that afternoon; that he was then pale, with beads of perspiration standing out on his forehead; that he complained of severe pains in his stomach, which witness diagnosed as an acute attack of gastritis, and that he then mixed up a dose of medicine consisting of elixir lactopeptine; that when that did not relieve him he gave him a tablet in which, among other ingredients, there was a quarter of a grain of morphine, and told him to go home. In response to a telephone message, he saw relator again that night, and he was then suffering from gastric trouble, so that he had to give him a hypodermic, and he saw him two or three times after that. Witness testified that the effect of the medicines he had given him would be to produce symptoms similar to those testified to as having been observed in relator. The police surgeon, being recalled, testified that in his opinion the medicine given to relator by his physician could not have produced an effect which would account for the condition he was in on the afternoon in question; and there was other evidence in the nature of expert testimony to the like effect.

[1] Intoxication upon the part of a member of the police force is an offense meriting the severest condemnation, and the courts should be very slow to interfere with the determination of the commissioner as to the fact of guilt. Nevertheless such guilt must be established by such fair preponderance of evidence as would sustain the verdict of a jury in a civil action, as to a fact in issue. In the case under consideration, in the last analysis we have direct testimony uncontradicted, and some of it from a source which must be deemed impartial, of illness and medical treatment only an hour or two before the occurrences complained of, and conflicting expert testimony as to whether the condition in which relator was then found could be the result of the drugs administered, or must have been in consequence of alcoholic stimulants. With some hesitation we have reached the conclusion that the preponderance of evidence does not establish such a conscious breach of discipline or violation of rule as warranted finding the relator guilty as charged. People ex rel. Hogan v. French, 119 N. Y. 496, 23 N. E. 1058; People ex rel. McAleer v. French, 119 N. Y. 602, 23 N. E. 1061; People ex rel. Reardon v. Partridge, 86 App. Div. 310, 83 N. Y. Supp. 705; People ex rel. Trayer v. Bingham, 126 App. Div. 351, 110 N. Y. Supp. 414.

[2, 3] Although the determination of the police commissioner must be reversed, we desire to call attention to a most reprehensible practice that has frequently come within our observation in connection with cases of this character. The writ of certiorari was sued out in April, 1913. This case was not brought to a hearing until more than a year later. In the absence of any other explanation, such delay must be attributed to ulterior and unworthy motives. As salary is an incident to office, and thus beyond our control, reinstatement carries with it salary for more than a year, during which the city has had no benefit of relator's services. The statute should be amended so that, if possible, it should provide that, if a case is not brought to a hearing within 30 days after the return is filed, the relator shall be deemed to have waived his salary from that date in the event of reinstatement.

While we have no control over the salary, we have over the costs of this proceeding (Code Civ. Proc. § 2143), and our decision is that the determination of the police commissioner should be annulled, and the relator reinstated, but without costs or disbursements. All concur.