In the Matter of the Application of IDA A. EVERITT, Petitioner, for a Peremptory Order of Mandamus against TEACHERS' RETIREMENT BOARD, Defendant.

Supreme Court, New York County, February 26, 1930.

*Samuel I. Frankenstein,* for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel [William E. C. Mayer, Assistant Corporation Counsel,* of counsel], for the defendant.

LEVY, J. Petitioner, a former public school teacher, retired under the provisions of section 1092 of the Greater New York Charter, commonly known as the Teachers' Retirement Law, seeks a peremptory order of mandamus to compel the defendant to increase her annual pension to the sum of $1,437.50. The allowance to retired .teachers is made up of two components: an annuity based upon the accumulated salary deductions in the retirement fund, and a pension based upon length of service. The second component is the only one involved in this controversy. This pension consists of twenty to twenty-five per cent of the average salary and in addition one-thirty-fifth of twenty-five per centum of a teacher's average salary for each year of "prior-service." (Greater New York Charter, § 1092, subd. M 1 [c].) This is a technical expression employed in the statute and refers to service prior to September 16, 1917. Here the law makes a discrimination in favor of those who were in the public school system on August 1, 1917. They are denominated "present-teachers," and as such are entitled to full prior service credit; whereas subsequent entrants may obtain such credit only for a maximum of fifteen years' service in schools outside of the city of New

York. (Greater New York Charter, § 1092, subd. H.) The result is that a teacher with a prior service record of thirty-five years or more will receive a pension of twenty-five per cent of her average salary; and this, together with the twenty-five per cent allowed under subdivision M 1 (b) of section 1092, will yield her a total pension of half her salary. In the instant case the petitioner was granted a prior service certificate for twenty-nine years and one month instead of thirty-five years to which she claims to have been entitled. Her pension allowance under subdivision M 1 (c) of the statute is, therefore, twenty-nine thirty-fifths of twenty-five per cent rather than a full quarter of her salary.

The controversy as to prior service allowance arises out of the fact that on November 24, 1897, petitioner was dismissed from the employ of the board of education. At that time she had been teaching twenty-four years, six months and twenty-two days in the regular day schools. In addition, she had credit for service prior to 1917 of three hundred and seventy-eight days as a substitute, and two years, seven months and eighteen days as a teacher in the evening schools, making her technical prior service twenty-nine years and one month. Her dismissal was for conduct unbecoming a teacher and was predicated upon the writing and mailing of a letter to a Mr. Farrell, a fellow-teacher. Its contents are not disclosed directly by these moving papers, but a copy was incorporated in a certiorari proceeding instituted in this court in behalf of petitioner in March, 1898. In respect to it, the comments of Associate Superintendent O'Shea, now city superintendent of schools, in his report to the board of education in 1918 become exceedingly important since they tend to show an absence of grievous wrongdoing on her part. He says: " Assuming that Miss Everitt tells the truth when she says that she knew Mr. Farrell from childhood, did her demonstrative attitude towards him and her sending to him the letter quoted constitute more than an emotional, imprudent, unwise act which of itself did not necessarily indicate moral turpitude although perhaps it deserved some form of critical censure? " The learned superintendent, it seems to me, further properly commented upon the fact that no proceedings whatever were initiated against Farrell, and that the petitioner alone was obliged to bear the brunt of the penalty imposed. Coming from so thoroughly reliable a source as this, these observations are fully persuasive. Furthermore, there can be no question but that Farrell knew petitioner from her childhood. Indeed, there is evidence in the earlier certiorari proceeding by this very Farrell that he was a close friend of her father, that the latter before his death practically placed her in Farrell's charge, requesting that she be looked after.

Accordingly, this was done and even her business affairs were managed by Farrell.

For a considerable number of years petitioner made repeated but fruitless efforts to have her case reopened, but it was not until 1919 that she met with any measure of success whatever. Upon the basis of the inquiry by Dr. O'Shea, in which he intimated that moderate punishment would have adequately sufficed, and perhaps better served the ends of justice, the board ordered her reinstated subject to the opinion of the corporation counsel as to the legality of such action. The latter reported adversely, and because of that, the board declined to grant any relief. Some two years later, in December, 1921, evidently following the precedent set by the State Commissioner of Education in *Matter of Zipfel* v. *Board of Education* (26 State Dept. Rep. 427) the board adopted the following resolution: " After consideration, it was moved and adopted that Miss Everitt be reinstated as a teacher in the public schools of the City of New York, and that the Superintendent of Schools be authorized to assign her to duty, provided she signs a waiver for any claims which she may have against the Board of Education from the time of her separation from the public school system in 1897 to the time of her reassignment to duty."

Upon her reinstatement she served three and one-half years in the day schools and received additional credit for evening school services from October, 1919, to August, 1925. But this will not avail her, as her teaching experience subsequent to 1917 may not be included as a part of her " prior-service " credit. She now claims that having been wrongfully deprived for twenty years of the opportunity to serve, when she was eager and able to do so, she is entitled to sufficient allowance to bring her prior service position to a total of thirty-five years or more, and to justify the relief here sought. Defendant denies that petitioner's dismissal was wrongful, that the board reconsidered and annulled its original action, and that she was entitled to service credit for the twenty-year period prior to 1917. Of course, it admits that she was reinstated, but urges that she waived all claims against the board of education and the city " of any kind whatsoever (salary, credit, etc.) * * * and more especially any and all claims for arrears of salary or back pay from the time of my dismissal * * * down to and including the present time * * *."

Ordinarily, the denial of essential averments of fact in a petition would bar the applicant from relief by peremptory mandamus. Here, however, the denials are largely denials of conclusions. The effect and the circumstances of reinstatement are disputed by defendant. But if we may adopt the undisputed facts and accept

defendant's version of the disputed ones, thereby leaving solely principles of law to be determined which must be resolved in favor of petitioner, then peremptory mandamus will lie and this remedy may be properly invoked. Whether she is entitled to prevail is now the question.

Obviously, her waiver of claim to salary and salary credit can have no bearing on her right to prior service allowance. Both the resolution of the board reinstating her and the language of the waiver, notwithstanding certain references in the latter to claims " of any kind whatsoever," indicate clearly an intent to limit the scope to demands for back pay. As in a release, the whole of the document must be read and construed, and even if general in its terms, it may be controlled and circumscribed in its effect by the limitation in the recital. (*Kirchner* v. *New Home Sewing Machine Co.*, 135 N. Y. 182.) The sole question in the case, then, is may any part of the twenty-year period preceding 1917, during which she was prevented from teaching in spite of her willingness to continue, be considered as prior service? I have little doubt that, if the action of the board in 1921 had contemplated a full exoneration of petitioner and a recognition of her complete innocence of the charges of 1897, she could not be deprived of prior service credit for all these years any more than she could be denied her back pay, if not waived. (*People ex rel. Baran* v. *Waldo*, 162 App. Div. 345; *O' Neill* v. *City of New York*, 81 Misc. 453.) At all events, she must be regarded as having been restored to duty after a suspension. None the less, would the board of education with the fullness of knowledge of facts disclosed by Dr. O'Shea, have done more than moderately punish her by censure or suspension for a comparatively brief period? Would the board in those circumstances have excluded her from the service for nearly twenty-five years? I think not. For to believe otherwise would do violence to all principles of equity and justice. Moreover, it appears that the retirement board upon advice of the superintendent of schools, having a proper perspective of the difficulty, in 1925 actually rated her as a " present-teacher." That would seem to mean that the retirement board, which numbers among its members the president of the board of education and one other commissioner, regarded her as constructively present in the service in 1917. In fact, the educational authorities in their desire to repair a wrong which they then felt powerless to right, had even granted her the privilege to substitute in the schools. It follows that her reinstatement must be considered at its worst as a cancellation of a long and unjust suspension woefully delayed by a mistaken view as to power.

Now let us recur to the decision of the State Commissioner of

Education in *Matter of Zipfel* (*supra*) to ascertain if that does not prove helpful. There, a teacher was accused of insubordination and incompetence and was dismissed. The Commissioner ordered the case reopened. While he felt that he could not direct the board of education to reinstate her without a new trial, he nevertheless recommended that it be done unless the board chose to grant her a new trial. In adopting this course, the Commissioner stated his views as follows (at p. 433): " It is permissible, however, to state that in view of all the circumstances the permanent dismissal of the petitioner from her position as teacher in the public schools of the city of New York is too severe a punishment for the acts complained of and which were made a basis for the charges preferred against her." The board accepted the recommendation and reinstated the dismissed teacher, who regained her position after an absence from the system of over five years. In the instant case, even if we assume that so long a period of suspension as five years was proper — an assumption by no means warranted by the evidence — we must conclude that for a period of at least fourteen years prior to 1917, petitioner was improperly deprived of her position. Salary and service credit were an incident of the latter. (*People ex rel. Baran* v. *Waldo, supra.*) She waived the salary, but she did not waive pension credit. Therefore, she is entitled to no back pay, but it requires no further consideration of the facts to determine that she is entitled to a sufficient allowance for service prior to 1917 to insure her the full benefits provided by the statute.

This petitioner is an elderly lady beyond three score and ten and I consider that it would be futile to compel her to resort to proceedings to determine what the board of education had in view when it reinstated her. Where right to an additional service allowance so as to bring her within the purview of the statute of pensions is so clear, to require her to establish a right to a further allowance would be useless and academic, and would needlessly delay a reparation already too long withheld.

Quite apart, therefore, from any considerations of humaneness and gratuitous anguish inflicted, this application for a peremptory order of mandamus is granted. Settle order.