THE PEOPLE ex rel. PATRICK MASTERSON, Respondent, *v.* STEPHEN B. FRENCH et al., Police Commissioners, etc., Appellants.

Where, upon charges preferred against a member of the police force of the city of New York, a dereliction of duty on the part of the accused is proved, such as, under the rules governing that force, authorizes a dismissal from the service, and the evidence for the accused simply establishes palliating circumstances, the question as to the sufficiency of the excuse is addressed solely to the discretion of the police commissioners; it presents no question of law or fact for the courts, and so a decision of the commissioners in such case removing the accused is not reviewable on *certiorari*.

Such a case is not within the provision of the Code of Civil Procedure (§ 2140), authorizing the Supreme Court, upon *certiorari*, brought to review the proceedings of a body or officer, where there was competent proof of all the facts necessary to authorize the decision sought to be reviewed, to determine whether there was such a preponderance of proof against the existence of any of the facts, "that the verdict of a jury, affirming the existence thereof, * * * would be set aside by the court as against the weight of evidence."

·(Argued June 9, 1888; decided October 2, 1888,)

APPEAL from an order of the General Term of the Supreme Court in the first judicial department, made the first Monday of January, 1888, which reversed a decision of the police commissioners, constituting the board of police of the city of New York, dismissing the relator from the police force, and which ordered his reinstatement.

The material facts are stated in the opinion.

*David J. Dean* for appellants. The court may reverse the action of the commissioners, in the exercise of a sound discretion, guided by legal principles; but it cannot, in total disregard of the weight of evidence and of the right of the commissioners to determine upon the credibility of the witnesses, capriciously reverse their decision. (*People ex rel. Foley* v. *French,* 8 Week. Dig. 466; 84 N. Y. 659.) The commissioners might decline to believe the statements of the friends of the relator, who endeavored to sustain the position

that he was sick, and not intoxicated. (*Elwood* v. *W. U. Tel. Co.*, 45 N. Y, 549; *Kavanagh* v. *Wilson*, 70 id. 177; *Gildersleeve* v. *Langdon*, 73 id. 609.)   It was the function of the commissioners to judge whether the testimony on the part of the relator, if believed, furnished an explanation of his condition. (*People ex rel. Hart* v. *Fire Comrs.*, 82 N. Y. 358; *People ex rel. Flanagan* v. *Board of Police Comrs.*, 93 id. 103; *People ex rel. Folk,* v. *Board Police, etc.*, 69 id. 411; *People ex rel. Masterson* v. *Board of Fire Comrs.*, 96 id. 644.)   This court has power to review the determination of the General Term in the case at bar. (*People ex rel. McCabe* v. *Board of Fire Comrs.*, 106 N. Y. 267.)

*Nathaniel C. Moak* for respondent.   Where the determination of an inferior tribunal, brought up for review by *certiorari*, has been reversed by the court granting the writ as against the weight of evidence, and the evidence is such that the court, guided by the rules governing in an application to set aside the verdict of a jury, would have power so to do, the decision is not reviewable here. (Code Civil Pro., § 2140; *People ex rel. McCabe* v. *Board of Fire Comrs.*, 106 N. Y. 257, 261, 262; 43 Hun, 554; *Dwight's Exr.* v. *Germania Life Ins. Co.*, 103 N. Y. 343, 358, 360; *People* v. *Comrs.*, 52 How. 289; *People ex rel. Brady* v. *French*, 11 N. Y. State Rep. 577 [Gen. Term, 1st Dept., November, 1887]; *People ex rel. McBride* v. *French*, 11 id. 887; *People ex rel. Drevet* v. *Fire Comrs.*, 30 Hun, 376; affirmed, 96 N. Y. 666; *People ex rel. Dumahaut* v. *Fire Comrs.*, Id. 672; *People ex rel. Campbell* v. *Campbell*, 82 id. 247; *People ex rel. Cook* v. *Board of Police*, 39 id. 506; *People ex rel. Clapp* v. *Board of Police*, 72 id. 415; *People ex rel. Fitzsimmons* v. *Jourdan*, 13 Week. Dig. 207.)   The finding and determination of the board was not sustained by a preponderance of evidence, and was, therefore, properly reversed by the Supreme Court. (*People ex rel. McBride* v. *French*, 11 N. Y. State Rep. 887; 27 N. Y. Week. Dig. 270; *People ex rel. Brady* v. *French*, 11 N. Y. State Rep. 577; *People* v. *Comrs.*, 52 How. 289.)   The testimony on the part

of relator being positive, and being met only by belief and impressions, there is no conflict of evidence, and the finding of the board in rejecting the former for the latter is not conclusive, but against evidence.   (*Dresser* v. *Van Pelt*, 1 Hilt. 316.)

Ruger, Ch. J.   The relator was tried before the police commissioners of New York, upon an issue formed by a plea of not guilty, to a charge of conduct unbecoming an officer, with a specification alleging that during " his tour of duty at 4.50 p. m., October 14, 1887, he was so much under the influence of intoxicating liquor as to render him unfit for duty," and was found guilty, and dismissed from the force.

Four witnesses, consisting of a police inspector, captain of police, police sergeant, and police surgeon, were examined on the trial as to the condition of the relator, and proved, among other things, that he was found asleep during hours of duty in a room on his beat, and when aroused was so drunk that he could neither walk nor stand alone; that his breath, eyes, complexion, conduct and effluvia, all showed that he was grossly intoxicated.

The police surgeon also testified that the relator admitted to him, upon being brought to the station, that he was intoxicated, and gave as an excuse therefor that he had attended a chowder party the evening before.

The relator was sworn in his own behalf but gave no evidence contradicting any of the facts proved on the part of the prosecution, or the admission to the police surgeon that he was intoxicated when brought to the station.   He testified that he had theretofore occasionally been affected with vertigo, and was ill of that complaint on the day in question, and had, in accordance with the advice of a physician previously given, taken two doses of bromide of potassium and ammonia, one in the morning and another about 3 o'clock p. m.; that he also drank something which a gentleman handed him in the room where he was taken, but did not know what it was.

He was corroborated by a witness who testified, that at the time stated, he gave the relator a glass of brandy and ginger

which he drank, and by a physician, who testified that in the summer of 1887 he prescribed bromide of potassium and ammonia for the complaint affecting the relator, and told him that it would not do him any harm to take this, and a drink of brandy. Two other witnesses testified that, in their opinion, the relator was sick upon the occasion in question.

Upon a removal of the proceedings, resulting in the relator's dismissal, to the General Term by *certiorari*, that court reversed the order of the commissioners and reinstated the relator in his office upon the ground, as stated in the order of reversal, "that the facts proven are insufficient to authorize the judgment and determination by said commissioners."

We are not entirely clear as to what the General Term means, by saying that their reversal is made for the reason that the facts proven are insufficient to authorize the decision of the commissioners. If this language be taken literally and held to mean just what it says, that the charge proved did not authorize the order made by the commissioners, the decision was manifestly erroneous. The order, as thus construed, presented a question of law simply as to whether the board had authority, under the rules applicable to the subject, to dismiss an officer for the cause stated. Those rules expressly provide that any member of the police force may be reprimanded, forfeit his pay, or be dismissed from the service for either of the following offenses, viz. : Intoxication, neglect of duty, or conduct unbecoming an officer. The case is, therefore, brought directly within the letter and spirit of the rule, and fully justified the order of dismissal.

Under the practice prior to the Code, the General Term had power to examine the evidence returned upon a common-law *certiorari*, only for the purpose of seeing whether the subordinate tribunal had kept within its jurisdiction, and that there was evidence legitimately tending to support its decision, and no rule of law affecting the right of the relator had been violated. (*People ex rel. Murphy* v. *French*, 92 N. Y. 309; *People ex rel. Hart* v. *Bd. of Fire Comrs*, 82 id. 360.)

By section 2140 of the Code of Civil Procedure their jurisdiction was somewhat enlarged, and they are now, when there is any competent proof of the charges made, authorized to review the facts and determine whether there was "upon all the evidence, such a preponderance of proof against the existence of any of those facts, that the verdict of a jury affirming the existence thereof, rendered in an action in the Supreme Court, triable by jury, would be set aside by the court as against the weight of evidence." It is quite impossible, we think, to bring this case within the class authorized to be reviewed by the General Term upon the facts. The fact in controversy under the issue made was whether, upon the occasion in question, the relator was rendered unfit for duty by reason of his intoxication.

The proof on this question was clear and positive, and practically undisputed on the trial. The fact that the relator was grossly intoxicated, and thereby rendered incapable of performing his duty, was placed beyond controversy by the evidence. The relator did not, in his testimony upon the trial, attempt to deny the fact of his intoxication, or question his want of capacity to perform duty, but contented himself with suggesting his alleged physical ailment as a palliation of the offense. He neither admitted or denied that he had been drinking, nor did he claim that he had done so in pursuance of the prescription of his physician, but left the case made by the prosecution wholly unaffected by contradictory proof. There was here no such conflict of evidence, much less such a preponderance of proof, as authorized a reversal by the General Term of the determination of the commissioners within the rule prescribed by the Code. Conceding the existence of an ailment on the part of the relator, as claimed by him, it affords no justification of his conduct. Neither does it produce a conflict of evidence upon the issue tried, but operated, at the most, as a palliation of his offense entitling him, perhaps, to the favorable consideration of his judges in determining the degree of his punishment.

If, however, we should give a strained construction to the

language of the General Term and hold that they thereby intended to pass upon the adequacy of the excuse offered by the relator, and determined that it was sufficient to purge the offense, we still think they exceeded the authority for review conferred upon them by the Code. Upon the view we take of the case, it stands as though the relator had pleaded guilty to the charge, and alleged the extenuating circumstances in mitigation of the punishment which he had incurred by reason of his offense. This would present a question pertaining solely to the general government and discipline of the force, and must, from the nature of things, rest wholly in the discretion of the commissioners. Such a question we do not think reviewable in an appellate court. When a dereliction of duty on the part of an officer has been proved, the sufficiency of an excuse therefor, presents no question of law or fact for the courts, but is addressed solely to the judgment and discretion of those who are primarily charged with the duty of maintaining the discipline and efficiency of the force.

The law is adapted to the purpose of guarding and protecting legal rights, punishing legal wrongs and enforcing legal duties, and in the very nature of things cannot wisely or prudently interfere with the performance of discretionary duties, imposed upon individuals selected for their adaptation to its exercise, and who are specially charged with its performance. Whether, under special circumstances, a particular officer is excusable, for having voluntarily rendered himself unfit for duty, or violated police regulations, depends so much upon the personal knowledge and experience of the commissioners, and the consideration by them of individual character, the general moral condition and discipline of the force, and other facts peculiarly within their knowledge, that an attempted review of their action by an appellate tribunal would proceed in a great measure, in ignorance of the facts upon which it was predicated.

The government of a police force assimilates to that required in the control of a military body, and the interference of an extraneous power in its practical control and direction, must

always be mischievous and destructive of the discipline and habits of obedience, which should govern its subordinate members. If its determinations upon all questions are subject to review, and appeals to some tribunal outside the force may be taken without restraint, it must necessarily lead to a want of respect towards their official superiors, and an impairment of the habits of obedience and discipline which are so essential to the efficiency and good conduct of a well regulated police force.

We are, therefore, of the opinion that this question was exclusively for the consideration of the commissioners, and that the appellate court had no authority to review the exercise of their discretion on the subject. (*People ex rel. Hart* v. *Bd. of Fire Comrs., supra.*)

The order of the General Term should be reversed and that of the commissioners affirmed, with costs against the relator in both courts.

All concur.

Ordered accordingly.