PEOPLE *ex rel.* REILLY *v.* BELL, Police Commissioner.

*(City Court of Brooklyn, General Term. January 28, 1889.)*

MUNICIPAL CORPORATIONS—REMOVAL OF POLICEMAN—BREACH OF REGULATIONS.

    Police regulation 136 of the city of Brooklyn provides that, "in case of fire, burglary, riot, or other emergency, the sergeant, roundsman, or patrolman who discovers the same shall immediately send information to the officer in command at the station, and in the mean time take such action as the case may require." Relator, hearing some one screaming, went to the place, and found a woman, who stated that one C., an acquaintance of relator, had broken into her room, and that to escape an assault she had jumped from the second-story window. Relator called two other officers, made an investigation, and concluded that no crime had been committed. He advised the woman to get out a warrant for C.'s arrest, but did not report the affair to the officer in charge at the station. *Held* a violation of the regulations.

*Certiorari* by James B. Reilly, a member of the police force of the city of Brooklyn, to review the proceedings of James D. Bell, police commissioner, in dismissing the relator from the force.

Argued before CLEMENT, C. J., and VAN WYCK and OSBORNE, JJ.

*S. Williams,* for relator.   *Frank E. O'Reilly,* for respondent.

CLEMENT, C. J.  The relator, a patrolman, on June 1, 1888, was dismissed from the police force of this city by Police Commissioner Bell, for violation of rule No. 136 of the regulations for the government of the force, which reads as follows: "In case of a fire, burglary, riot, or other emergency, the sergeant, roundsman, or patrolman who discovers the same shall immediately send information to the officer in command at the station, and in the mean time take such action as the case may require." Reilly was duly served with charges, and was represented by counsel on the hearing, and there seems to have been no substantial dispute as to the facts.  He, while on patrol, at about 1 o'clock at night, was standing in Nostrand avenue, about 200 feet from Flushing avenue, and, hearing some one screaming, went to the corner, and there found a woman named Rafferty, who stated that two men broke into her rooms, and, to escape an assault, she jumped from the second-story window.  She also stated that one of the men was named Fatty Callahan, a bar-tender in the vicinity, with whom Reilly was acquainted.  He (Reilly) called two other policeman who were on duty in the vicinity, and made an investigation, and concluded, according to his statement, that no crime had been committed, and yet advised the woman to get a warrant for the arrest of the parties.  The officer made no report of the affair to the sergeant in charge at the station-house, and for his failure so to do was dismissed from the force.  It is contended that the commissioner erred in convicting him of a violation of rule 136, for the reason that he was not required by such rule to make a report of the facts in the Rafferty case.  It appears that the rule covers a case of burglary in so many words, and also it is conceded that the general words "other emergency" are to be construed in the light of the preceding particular words, "fire, burglary, riot."  It follows that an attempt to commit rape is an emergency, within the meaning of the rule, for the crime of rape is at least in degree equal to that of burglary; but we think, further, that, if the statement of the woman made to the officers was true, the two men had committed the crime of burglary. Sections 496, 499, Pen. Code. The officer was not bound to arrest the prisoners, and he was right in investigating the case to see whether there was any foundation for the statement made by the woman; but he clearly violated the rule in question when he failed to make a report at the station-house, and laid himself open to the strong suspicion of an endeavor to shield an acquaintance.  He took upon himself to decide that a crime had not been committed.  If he was in doubt, it was his duty to ascertain the facts as far as possible, and report to his superior officer, and then act according to his orders.

While the report of Capt. Druhan is returned as a part of the record, it does not appear that the same was offered in evidence on the trial, and we therefore assume that the commissioner decided the case on the testimony before him, and not on the records of his department.  The relator was clearly guilty of the charge preferred against him, and, under the authority of *People* v. *French,* 110 N. Y. 494, 18 N. E. Rep. 133, we have not the power to review the sentence imposed upon him.

It therefore follows that the proceedings of the commissioner must be affirmed, with $50 costs and disbursements.  All concur.