### PEOPLE ex rel. DOLAN v. MACLEAN et al., Police Com'rs.

*(Supreme Court, General Term, First Department. June 6, 1890.)*

MUNICIPAL CORPORATIONS—REMOVAL OF POLICEMAN.
Relator was charged with being absent from his post during his time for patrol duty. A woman of bad reputation testified that he had visited her in his uniform during his hours of duty, and had taken her to an office, which he had opened with a key. Other witnesses corroborated her. On behalf of defendant two persons testified to having keys to the office, but stated that defendant had neither of their keys nor leave from them to go to the office. Other persons who had keys were not called. *Held,* that the question of defendant's guilt was wholly one of fact for the commissioners, and his dismissal from the force would not be disturbed.

*Certiorari* to review the dismissal of the relator, Thomas F. Dolan, from the police force of the city of New York.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.
*Louis J. Grant,* for relator. *John J. Delany,* for respondents.

DANIELS, J. The relator was charged with being absent from his post and neglecting his duty during the time he was assigned to patrol his district. A variety of specifications were made, elaborating and pointing these charges. Other charges still more seriously involving his conduct were also made, but he was not tried upon them, although, incidentally, evidence did appear awak-

ening at least a suspicion that they may have been well founded. But the charges actually tried, and upon which the removal took place, were those first referred to, of absence from his post and neglect of duty. And to support the action taken, the only inquiry required to be made is whether the evidence was sufficient to sustain those charges. That which was given by the witness Kate Hogan was positive and direct that he had visited her in his uniform, and during his hours of patrol duty, and that she, in the night-time, and while he was on duty, repaired with him to the office of Mr. Lowry, which the officer opened with a key produced by him, and was there with him for a considerable interval of time. The latter statement was sustained as to one occasion by the witness Rebecca Leon, who testified that she saw him on one evening between 10 and 11 o'clock standing in the hall-way with his back to the office door looking over to the building in which these witnesses resided, and then he went into the office; that the witness Hogan left the house entrance of the building where these persons resided, and crossed to the court-house on their street, stooped down when she reached the liquor store, and then proceeded to the office, and entered it just after the relator had gone in there, and the officer was then in his uniform. Joseph Leon also testified to a similar occurrence, but without being able to identify the relator as the officer. Other evidence was given also which indicated that the officer and the witness Kate Hogan were at least familiar acquaintances. Evidence was also given by Kate Hogan and John Hogan of his visit to her in his uniform, at her own room, remaining from fifteen to thirty or thirty-five minutes. And this was confirmed by Mary Dwyer, so far that she testified that she saw an officer up in the building, where he remained about a quarter of an hour, and Miss Hogan was speaking to him as he went down. On behalf of the officer evidence was given by two persons having keys to the office mentioned that he had neither of their keys nor any liberty to go to the office; but other persons had keys who were not called, and the officer may have obtained one of those keys, and entered the office in that way. But after giving all due weight to the evidence of these witnesses, and that of the relator himself, there remains very slight cause for doubt but that the officer was possessed of a key by which he was able to and did unlock and use the office. The weight of the evidence imputing bad character to Kate Hogan did reduce the reliability of her statement; but it was not without another effect, at the same time, and that was, to add increased probability that she consorted with the officer, as the facts were stated by herself and other persons sworn upon the hearing. And that evidence was not overcome by the denials of the officer as a witness in his own behalf, or by those denials and the testimony of his other witnesses; for what they were able to say had very little to do with his exculpation, and at the same time it was in part avoided by the fact still appearing in their statements that relations of intimacy did exist between the officer and Kate Hogan. The question of the officer's guilt was wholly one of fact. In a trial of it before a jury it would have been for them to decide, and their decision against the officer would have been conclusive upon the court. There was no preponderance which would allow a verdict to be set aside; and the law requires the same controlling effect to be given to the decision of the commissioners. Code Civil Proc. § 2140, subd. 5; *People* v. *Fire Com'rs*, 82 N. Y. 358; *People* v. *French*, 7 N. Y. St. Rep. 253; *People* v. *French*, 110 N. Y. 494, 18 N. E. Rep. 133. Objections were made on the hearing as to differences in time between the evidence and the charges; but there was substantial conformity to the charges in the proof. The relator could not have been misled, and the variance resulted in no inability on the part of the officer to meet the charges as far as the evidence was under his control, which was adapted to that end. All that could be produced was laid before the commissioners; and, as it did not in judgment of law overcome the case made against him, the decision of the commissioners should be affirmed. All concur.