In the Matter of CHARLES SEDITA, Petitioner, v C. SAMUEL KISSINGER, as City Manager of the City of New Rochelle, et al., Respondents.

Second Department, February 5, 1979

**APPEARANCES OF COUNSEL**

*Hartman & Lerner (Reynold A. Mauro* of counsel), for petitioner.

*Maxwell E. Charat (John M. Bopp* of counsel), for respondents.

**OPINION OF THE COURT**

O'CONNOR, J.

In the long ago, Gilbert & Sullivan properly put to music the sad lament: "Ah, take one consideration with another—A policeman's lot is not a happy one!"[1]

To confirm the challenged determination would, by any standard, not only make that lot more unhappy but would do violence to both logic and law.

What does the record show? In the fall of 1975, a long and drawn out strike by members of Local 1199, employees of the Woodland Nursing Home in New Rochelle, became increasingly violent. Extensive damage was done to automobiles and other property in the vicinity necessitating frequent dispatch of police to the scene.

It is undisputed that there was a confrontation—for want of a better word—at the picket line, in front of the nursing home, between petitioner, Patrolman Charles Sedita, of the New Rochelle Police Department, and the complainant, Darvannie Flims, a member of the local who was on strike duty at the scene.

Despite Miss Flims' pious protestation of complete innocence (she testified that a cup of hot chocolate was accidentally spilled on the officer), official court records indicate that Miss Flims was arrested for and convicted of disorderly conduct, and that she was fined $50. The testimony of Officer Sedita and several independent and disinterested witnesses was, in substance, to the effect that immediately prior to her arrest, the complainant was using vile, abusive and threatening language towards a strike breaker; that she refused to obey proper and lawful police orders to desist; and that she threw a cup of hot liquid in the face of Sedita, the arresting officer. She vigorously resisted arrest by kicking, biting, scratching, squirming, cursing and throwing herself to the ground.

On the issue of Miss Flims' credibility, the director of nursing at the Woodland Nursing Home testified that during her employment at the nursing home Miss Flims had, on more than one occasion, been warned about "her disrespect for authority and she was told to control her mouth and her temper" and that she was risking possible termination of employment. Despite these repeated warnings, the witness

---

1. Pirates of Penzance, Act 2, "Sergeant's Song".

said that Miss Flims continued her antagonistic attitude and made frequent threats of serious physical harm to her coemployees.

It was upon this record that the hearing officer (1) rejected complainant's testimony of the use of excessive force and vile and abusive language as set forth in specifications II and III, (2) dismissed these charges and (3) noted "that no unnecessary force was used".

As to the first specification, however, the hearing officer found that Officer Sedita did in fact arrest Darvannie Flims on October 12, 1975, that Miss Flims resisted arrest and that Sedita used force in making the arrest. He noted that the question "is not whether Patrolman Sedita used force in effecting the arrest, but rather whether or not the force used was excessive". The report notes that "Patrolman Sedita testified that he used his body to contain Flims' struggles, and that he was bitten by Flims in the process. The question then is whether it was necessary when he had assistance available for Patrolman Sedita to go to the ground with Miss Flims and lie on her to control her struggles. I conclude that such action was an unnecessary use of force for a professional police officer".

The hearing officer's report followed three days of hearings, more than a dozen witnesses and some 720 pages of testimony: "A mountain was in labour, sending forth dreadful groans, and there was in the region the highest expectation. After all, it brought forth a mouse."[2]

But what *is* excessive force? Is it not flexible to the extent of the circumstances under which the force is exercised? What were the options available to Sedita as he sought to arrest a biting, fighting, screaming, kicking, cursing recalcitrant who refused to be arrested? Would reason condemn the instant option selected by Sedita as he sought, with a minimum of force, to contain this ill-tempered tiger, to avoid somehow those flailing arms and those wildly kicking legs and to somehow escape those slashing, biting teeth? "O tiger's heart wrapp'd in a woman's hide!"[3] Was it really using "excessive force" to smother her body with his own? Common sense, let alone simple logic and basic reason, impels the prompt answer, "No"!

---

2. Phaedrus: Fable 22, I
3. Shakespeare, King Henry VI

What does the law say? First of all, the only pertinent question that can be raised in this article 78 proceeding is set forth in CPLR 7803 (subd 4): "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence."

There is a long line of cases holding that in such matters, appellate courts may not disturb the determination of an administrative board if, in the record, there is substantial evidence to support it (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Pell v Board of Educ.,* 34 NY2d 222).

In *Matter of Weber v Town of Cheektowaga* (284 NY 377, 380) the quality of the required substantial evidence is referred to as *"proof sufficient to satisfy a reasonable man"* (emphasis supplied). From these and other cases, it would appear that the *ratio decidendi* is reasonableness. Does the evidence sustaining the determination appeal to men of reason?

Coming closer now to the specifics before us, involving as it does a member of a police department, it should be noted that because of the unique role played by the police in our society, courts have been loath to disturb the findings of a police board. An early expression of this kind of thinking is found in *People ex rel. Brown v Greene* (106 App Div 230, affd 184 NY 565) where it was said (106 App Div, at p 232): "The holding of the appellate courts of this State has uniformly been that the good of the service requires that a wide discretion should be vested in police commissioners, and that their judgment and determination in a given case will not be disturbed *unless there is an absence of evidence to sustain it"* (emphasis supplied). (See *People ex rel. Masterson v French,* 110 NY 494.) Yet in *Matter of Halloran v Kirwan* (28 NY2d 689), a case involving a police officer, the court did not hesitate to annul the determination because of the absence of substantial evidence. While *Halloran* is not apposite as to its facts, it stands four square for the proposition that, even in police cases, when there is an absence of substantial evidence, the court will not hesitate to annul the determination.

Now to the case at hand. The determination must be annulled, upon the authority of *300 Gramatan Ave. Assoc. v State Div. of Human Rights* (45 NY2d 176, *supra).* First of all, *Gramatan* clearly says (p 181): "Whether an administrative agency determination is shored up by substantial evidence is a

question of law to be decided by the courts [citations omitted] it having been stated with some frequency that insufficient evidence is, in the eyes of the law, no evidence [citations omitted]."

Discussing the relationship between substantial evidence and permissible inferences, *Gramatan* notes that (p 179): "a determination is regarded as being supported by substantial evidence when the proof is *'so substantial that from it an inference of the existence of the fact found may be drawn reasonably'* [citations omitted]" (emphasis supplied).

It is, of course, true that an administrative board may draw inferences from its findings of fact. But an inference has been defined as a "process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from * * * a state of facts, already proved or admitted."[4] Whether or not the particular facts established logically permit the inference to be drawn is, as already noted, a question of law well within the province of the reviewing court *(Matter of Fisher [Levine]*, 36 NY2d 146).

The determination here must be annulled because, simply stated, there is present insufficient evidence upon which to predicate it. Because Sedita had, as the hearing officer put it, "assistance available" (in the presence of other police officers) the inference is drawn that Sedita's action in seeking to restrain his obstreperous prisoner somehow constituted excessive force. Yet there is not a scintilla of evidence in the record to indicate that such action (effective and successful as it was) is in any way equated with excessive force or that it is violative of any departmental rule or regulation or contrary to any accepted police practice. Without such evidence, it does not follow any logical sequence to infer—indeed, it would be a distortion of logic to conclude—that Sedita's actions constituted the use of excessive force.

SHAPIRO and MARTUSCELLO, JJ., concur with O'CONNOR, J.; TITONE, J. P., dissents and votes to confirm the determination and dismiss the petition on the merits, with the following memorandum: Were I free to do so, I would annul the determination under review. However, *Matter of Pell v Board of Educ.* (34 NY2d 222) constrains me to confirm this determination.

4. Black's Law Dictionary [rev 4th ed], p 917.

Petition granted, determination of the respondent City Manager, dated January 31, 1977 annulled insofar as reviewed, on the law, and charges dismissed, without costs or disbursements.