In the Matter of WILLIAM E. LEWIS, as President of Suffolk Chapter, Civil Service Employees Association, Inc., et al., Respondents, v JOHN P. FINNERTY, as Sheriff of County of Suffolk, et al., Appellants.

Second Department, August 20, 1979

* By the Publisher's Editorial Staff.

### APPEARANCES OF COUNSEL

*Howard P. Pachman, County Attorney (Anton J. Borovina* of counsel), for appellants.

*Lester P. Lipkind* for respondents.

### OPINION OF THE COURT

SHAPIRO, J.

In an article 78 proceeding, *inter alia,* to enjoin the County of Suffolk and John P. Finnerty, Sheriff of Suffolk County, from continuing certain alleged overtime practices with respect to correction officers at the Suffolk County Jail, the appeal is from an order which denied appellants' cross motion to stay the proceeding pending arbitration and ordered a trial on the merits of the petition.*

■ The order should be reversed and appellants' cross motion for a stay of these proceedings pending arbitration should be granted.

The essence of the petitioners' (correction officers) *complaints* is (1) that there is a tremendous understaffing of correction officers; (2) that they have been required to work an inordinate amount of overtime since there are not sufficient numbers of correction officers who have volunteered to fill in on the overtime that is necessary; and (3) that they are forced to work *unwanted* overtime, with the Sheriff going so far as to lock the doors of the jail so that they cannot leave at the close of their regular tour of duty.

The Sheriff's position, in essence, is that the collective

* We deem leave to appeal to have been granted by this court's order dated December 19, 1978.

bargaining agreement has a broad arbitration clause, and that what the correction officers are complaining about are matters that should be submitted to arbitration since they essentially relate to terms of employment.

The court, after a hearing on the cross motion for a stay of this article 78 proceeding (per CPLR 7503, subd [a]) held that the dispute was not arbitrable on the grounds that (1) *public policy* forbids the issues to be decided by arbitration, and (2) the provisions in the collective bargaining agreement effectively narrow what would otherwise be an encompassing broad arbitration clause. We disagree.

Appellants' cross motion for a stay of this article 78 proceeding (i.e., arguing *for* arbitrability) is based on the following provisions of the agreement:

"6.2 Equalization of the Opportunity for and Obligation to Perform Overtime

"Overtime work, as an opportunity, in the same or related title shall be equalized among departmental employees as far as is practical. Normally, seniority shall be the basis for determining the allocation of overtime work as an opportunity. Department heads and supervisors *may require the performance of overtime* or 'called-in' work *for reasonable periods as an obligation* in cases where, as because of seasonal or *extraordinary requirements related to the job* or because of the absence of normal personnel for whatever reason, such work is necessary to meet the normal work demands of the function of the Department, *or some emergency exists.* In the absence of such circumstances, overtime opportunity shall be allocated by seniority. * * *

"13. *Disputes, Grievance and Arbitration Procedure*

"*Any and all disputes arising out of or concerning the interpretation or application of the terms* of the contract shall be adjusted as follows: * * *

"B. Arbitration—Arbitration shall be invoked by the C.S.E.A. or the County with notice to the other party" (emphasis supplied).

Section 13B (4), which delineates the arbitrators' authority to resolve disputes, reads: "4. The arbitrator shall have the [authority] to make a final binding decision upon *any* timely and properly presented *claim* by either party *that the other has violated this agreement,* except that the arbitrator shall not have such authority respecting any matter as to which (a)

the County retains exclusive rights under Section 3 of this agreement or by operation of law or otherwise, or (b) another method of review is prescribed or made applicable by law or rule or regulation having the force and effect of law. The arbitrator shall be without power or authority to make any decision which requires the County to commit an act prohibited or affirmatively permitted by law or rule or regulation having the force and effect of law or which violates or adds to any provision of this agreement or any validly existing rule or regulation of the County" (emphasis supplied).

Petitoners, in opposition to the contention that they should go to arbitration, rely in large part on section 500-c of the Correction Law, which in pertinent part, is as follows:

"500-c. Custody and control of prisoners.

"Each sheriff, except the sheriff of the city of New York and the sheriff of the county of Westchester, shall have custody of the county jails and shall receive and *safely keep,* in the county jail of his county, every person lawfully committed to his custody for safekeeping, examination or trial, or as a witness, or committed or sentenced to imprisonment therein, or committed for contempt" (emphasis supplied).

Special Term, in ruling that the question of mandatory overtime was not arbitrable, gave two reasons for its conclusion: (1) section 500-c of the Correction Law imposed a nondelegable duty on the Sheriff to "keep safe" the prisoners within his jail and (2) the issue of forced overtime could not be resolved by looking to section 6.2 of the collective bargaining agreement since there was no real emergency at the Suffolk County Jail.

Special Term was in error. The collective bargaining agreement contains a broad arbitration clause which, in pertinent part, reads: "4. The arbitrator shall have the [authority] to make a final binding decision upon *any* timely * * * claim * * * *that the other has violated this agreement"* (emphasis supplied).

Clearly, therefore, under that very broad provision the question of whether overtime was or was not properly ordered by the Sheriff would ordinarily be an arbitrable issue. Special Term concluded, however, that despite the breadth of the arbitration clause it should not be ordered in this case since under the pertinent provisions of section 500-c of the Correction Law the Sheriff was charged with the obligation, responsibility and duty to "receive and safely keep * * * every person

lawfully committed to his custody" and that therefore it would be against public policy to leave the determination of that responsibility to an arbitrator. In coming to that conclusion Special Term misconceived the issue, which is *not* whether there is a continuing statutory duty on the part of the Sheriff with respect to the safety of prisoners placed in his custody but simply whether "because of seasonal or extraordinary requirements related to the job or because of the absence of normal personnel for whatever reason, such [overtime] work is necessary to meet the normal work demands of the function of the Department, or some emergency exists." Whether the conditions requisite to the performance of overtime services thus existed was a matter which the parties agreed to leave to arbitration if there was a dispute between them with regard thereto.

■ We may not preclude arbitration on the assumption that the determination of the arbitrator will violate the State public policy for as the court said in *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.* (45 NY2d 411, 418): "even though the full scope of relief in precisely the form demanded by the teachers association might, if granted *in toto* by the arbitrator, ultimately lead to an award which would be subject to vacatur this consideration does not, standing alone, justify judicial interference with the arbitration process at this stage. The arbitrator's broad power to fashion appropriate relief may therefore not be presumed in advance to necessarily entail public policy conflicts discernable in the abstract by the courts. It follows that where the relief sought is broader than any enforceable remedy that may prospectively be granted but may also be adequately narrowed to encompass only procedural guarantees, as in these cases, a stay of arbitration on policy grounds is premature and unjustified."

In commenting on that determination this court in *Matter of Wyandanch Union Free School Dist. v Wyandanch Teachers Assn.* (66 AD2d 895, 896) said: "the Court of Appeals explicitly rejected the notion that arbitration in a dispute between a public school district and a teachers organization should be stayed merely because the requested remedy, if granted, might result in an *impermissible delegation* of the board of education's supervisory responsibility under the Education Law" (emphasis supplied).

■ If in fact the arbitrator's determination should in any

way contravene the public policy of the State it will then be time for complaint (see *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 357). This is not a case like *Matter of Aimcee Wholesale Corp. (Tomar Prods.)* (21 NY2d 621, 626), where the court held that the question of enforcement of the State's antitrust policy embodied in section 340 of the General Business Law "should not be left within the purview of commercial arbitration" because that statute "represents [a] strong public policy in favor of free competition for New York." In the same vein is *Matter of Wertheim & Co. v Halpert* (65 AD2d 724, 725) where the court held that Equal Employment Opportunity Commission discrimination cases likewise " 'cannot be left to commercial arbitration' ", since such matters, similar to antitrust controversies are of " 'extreme importance to all people of this State.' " While "[p]ublic policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate" *(Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers Assn.],* 37 NY2d 614, 616-617), that is not the situation here, which, no matter how viewed, is merely a dispute between an employer, albeit a county employer, and his employees as to whether the existing conditions warrant his right to demand that they serve overtime.

As the Court of Appeals recently said in *Mineola Union Free School Dist. v Mineola Teachers Assn.* (46 NY2d 568, 571), in which the same argument against arbitrability on the ground of public policy was made: "We reject this contention. Initially we observe that arbitration is foreclosed only when it 'contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility'; '[i]ncantations of "public policy" may not be advanced to overturn every arbitration award that impairs the flexibility of management of a school district' *(Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898, 899)." (See, also, *Matter of Sprinzen [Nomberg],* 46 NY2d 623.)

The second prong of the determination by Special Term was that, as a matter of law, no emergency existed which gave the Sheriff the right to demand that his employees work overtime. However, examining and resolving that issue constituted an impermissible inquiry by the court into the merits of the controversy between the parties (see, e.g., *Board of Educ. v New Paltz United Teachers,* 44 NY2d 890).

The order appealed from should therefore be reversed and this proceeding should be stayed pending the determination of the arbitrator.

LAZER, J. P., RABIN and GULOTTA, JJ., concur.

Order of the Supreme Court, Suffolk County, entered October 23, 1978, upon an appeal by permission, reversed, on the law, with $50 costs and disbursements, and cross motion for a stay pending arbitration granted.