■ In the Matter of the Arbitration between the Incorporated Village of Malverne, Appellant, and Malverne Police Benevolent Association, Inc., Respondent.—In a proceeding to stay arbitration, petitioner appeals from a judgment of the Supreme Court, Nassau County, dated October 17, 1977, which denied the application. Judgment reversed, on the law, with $50 costs and disbursements, and application granted. The collective bargaining agreement between the parties provides a three-step grievance procedure for "all" grievances, culminating in binding arbitration. The term "grievance" is not defined in the agreement. On May 29, 1977 Police Officer John J. Love was ordered by his superior, Sergeant James Sarifis, to remove a neck chain he was wearing and not to wear it again while on duty. This order was grieved on the ground that it violated the officer's freedom of expression and civil rights and on the further ground that there is no rule or regulation which prohibits the wearing of neck chains by officers while on duty. (The regulations prescribe a dress code, but are silent as to the wearing of neck chains.) Chief of Police Raymond Carrigan rejected the grievance, *inter alia,* on the ground that the offending chain or necklace was a source of danger to the officer on duty in that such a chain or necklace could be used as a weapon against him in circumstances where the officer meets with physical resistance. When the grievance was denied at the second step, the Malverne Police Benevolent Association demanded arbitration. The petitioner unsuccessfully applied for a stay. The applicable principles are well established. The question of arbitrability in the public sector is subject to a two-tiered analysis. It must first be determined whether there is anything in statute, decisional law or public policy which would preclude a public employer from agreeing to refer the dispute to arbitration. At the second level, the language of the agreement is examined to determine whether the parties' dispute falls clearly and unequivocally within the class of claims agreed to be referred to arbitration. *(Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509.) "The public employer's power to bargain collectively, while broad, is not unlimited. Although a public employer is free to negotiate any matter in controversy, whether or not it involves a term or condition of employment subject to mandatory bargaining, it may do so only in the absence of 'plain and clear' prohibitions in statute or controlling decision law, or restrictive public policy" *(Matter of Board of Educ. v Yonkers Federation of Teachers,* 40 NY2d 268, 273). In our view, there is a strong public policy against arbitration of the subject controversy. The award of the arbitrator is subject to no pertinent review other than the possibility of vacatur under CPLR 7511 on the ground that the arbitrator exceeded his power. There is involved here not only the safety of the police

officer, but also the safety of the public since anything which poses a potential threat to the officer necessarily affects the quality of the protection afforded the public. Consequently, it is against the public interest to substitute the arbitrator's judgment for that of the Chief of Police on whose expertise the public has the right to rely. While we are mindful of the recent statement by the Court of Appeals that "there are now but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to either place them beyond the bounds of the arbitration process itself or mandate the vacatur of awards which do violence to the principles upon which such matters rest" *(Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 630), none of the cases cited therein refers to arbitration involving a member of a police force. The courts have distinguished between police officers and other public employees in cases involving the review of administrative determinations. It has been said *(People ex rel. Masterson v French,* 110 NY 494, 499-500): "The government of a police force assimilates to that required in the control of a military body, and the interference of an extraneous power in its practical control and direction, must always be mischievous and destructive of the discipline and habits of obedience, which should govern its subordinate members. If its determinations upon all questions are subject to review, and appeals to some tribunal outside the force may be taken without restraint, it must necessarily lead to a want of respect towards their official superiors, and an impairment of the habits of obedience and discipline which are so essential to the efficiency and good conduct of a well regulated police force." Rules and regulations which prohibit moonlighting by police and firemen have been upheld while a similar directive with respect to welfare department employees has been held to exceed the powers of the city welfare department *(Flood v Kennedy,* 12 NY2d 345, citing *People ex rel. Masterson v French, supra).* In confirming the dismissal of a police officer, the Court of Appeals commented in *Matter of Pell v Board of Educ.* (34 NY2d 222, 237): "At first blush, the punishment imposed might seem excessive or unduly harsh; however, policemen hold a sensitive position in a community and have an obligation to aid in safeguarding and protecting the community which they serve. Armed as they are with dangerous or deadly weapons, the use of such a weapon without conscious recollection of such use, could pose a serious future threat of possible harm to civilians and others. The Chief of Police as the person ultimately responsible for effective discipline must seek to protect both the community and the police force from dangers reasonably foreseen and risks which might become serious liabilities, or have grave consequences." These considerations mandate reversal. We do not say that arbitration of every matter affecting police officers, whether or not covered by the rules and regulations of a police department, would contravene public policy and we limit our holding to arbitration of the subject controversy. Titone, J. P., O'Connor, Gulotta and Margett, JJ., concur.