OPINION OF THE COURT
Eli Wager, J.
The primary issue raised in this application by the Village of Malverne for an order staying the arbitration demanded by the Malverne Police Benevolent Association, Inc. (PBA) is whether arbitration of a directive issued by the chief of police would violate public policy. A second issue is whether the parties agreed to arbitrate this particular dispute. The directive provides as follows: “3. no MEMBER WHO HAS BEEN ON SICK LEAVE WILL BE AUTHORIZED TO WORK OVERTIME UNTIL A MINIMUM OF (48) HOURS HAS ELAPSED FROM THE TIME HE REPORTS OFF SICK LEAVE.” The collective bargaining agreement between the parties provides a three-step grievance procedure for “all grievances” culminating in arbitration. The term “grievance” is not defined. The PBA claims that the directive alters existing procedure for distributing overtime and is thus a violation of article 3 of the continuation of benefits clause of the collective bargaining agreement which provides that: “The Village shall continue to provide all benefits and conditions afforded members of said police force to and including the date hereof, unless the same are in conflict with any of *1073 the express provisions of this agreement in which event this agreement shall prevail.”
It appears that the agreement contains no provision for overtime and that the section involving sick leave contains no provision relating to right to overtime upon return from sick leave. The PBA urges (and the village appears to agree) that past practice established by the department has been to offer overtime opportunities to those police officers who have worked the least amount of overtime in a given quarter.
In determining whether a public employee dispute is arbitrable, a court can only concern itself with two questions: (1) whether arbitration of the subject matter of the dispute is permissible under the Taylor Law (Civil Service Law, art 14) and is allowable as a matter of public policy; and (2) whether the parties agreed by the terms of their arbitration clause to submit such disputes to arbitration (Matter of Franklin Cent. School v Franklin Teachers Assn., 51 NY2d 348). If it is determined that the arbitration clause is broad enough to encompass the subject matter of the dispute, any question whether a substantive portion of the agreement in issue entitles the grievant to the relief sought is for the arbitrator to decide (51 NY2d 348).
The village urges that it is entitled to a stay of arbitration because overtime was not a subject negotiated by the parties and is not within the agreement. In addition, it argues — in its memorandum of law — that arbitration of the instant dispute would violate public policy since the safety of the public is implicated, i.e., a man returning from sick leave may be “bearly [sic] able to work his regular shift” and may, by working overtime, have a relapse. However, despite the public policy argument, the village contends in its memorandum that the PBA should “cover this subject in its negotiations for another contract,” thus apparently conceding that the issue is a proper subject of negotiation.
In support of its contention that arbitration of this particular dispute would violate public policy, the village relies upon Matter of Incorporated Vil. of Málveme (Málveme Police Benevolent Assn.) (72 AD2d 795), which in- *1074 valved a prior dispute between these two parties respecting the power of the police chief to sustain an order directing a police officer to remove a neck chain. The Appellate Division granted the village’s application for a stay of arbitration upon public policy grounds, to wit, that the safety of the public as well as the police officer was involved and that a neck chain could be used as a weapon against a police officer who meets with physical resistance. The court ruled that in reviewing administrative determinations it is necessary to distinguish between cases involving members of police and fire departments and other public employees, citing, inter alla, Flood v Kennedy (12 NY2d 345). In Flood the court refused to enjoin the Police Commissioner of the City of New York from enforcing his rule precluding police force members from taking outside employment upon a finding that it was not unreasonable for the commissioner to conclude that (p 348) “outside employment seriously interferes with keeping the police and fire departments fit and ready for action at all times.” “ ‘The government of a police force’ ”, the court observed (p 347), citing People ex rel. Masterson v French (110 NY 494), “‘assimilates to that required in the control of a military body’ ”.
The instant case is distinguishable from both of the cited cases since the issue sought to be arbitrated here — the allocation of overtime — may be categorized as a term and condition of employment (Civil Service Law, art 14). And in fact the village appears to concede as much when it suggests that the PBA’s proper remedy is negotiation rather than arbitration in advance of negotiation. Furthermore, the directive sought to be arbitrated raises issues not raised in either the Málveme case or in Flood. The orders in the latter cases were flat prohibitions on given activities (moonlighting or the wearing of neck chains) whereas the directive in the instant case involves an arbitrary determination that all police officers return to work after an illness in a weakened condition and that 48 hours — no more or less — are required to fully recover. Thus, the issue is not solely the duty of the chief of police to provide for the safety of the public and the officers of his department (cf. Matter of Lewis v Finnerty, 70 AD2d 174).
The instant case is also distinguishable from the cases relied upon by the village since there is a question here *1075 with respect to whether the parties agreed to arbitrate the particular issue in dispute. Flood was an action for an injunction and involved no such issue. In Málveme, although the PBA predicated its demand for arbitration upon the same continuation of benefits clause (art 33) at issue here, there was no evidence that it had been past practice to condone the wearing of neck chains and the PBA’s opposition to the application for a stay of arbitration was predicated upon the contention that no rule or regulation prohibited such activity and that the order denied police officers their First Amendment right of free speech. The court limited its holding to the “subject controversy”, suggesting that a different set of facts might have led to a different result.
On the issue of the parties’ agreement to arbitrate the dispute in this case, it appears that, in light of the broad arbitration clause (i.e., “all grievances”), the issue of whether article 33 encompasses existing practices relating to allocation of overtime is not an issue for the court to determine (cf. Matter of Board of Educ. v Roosevelt Teachers Assn., 47 NY2d 748; Matter of Franklin Cent. School v Franklin Teachers Assn., supra). Where there exists a broad arbitration clause, the question of the scope of the substantive provisions of the agreement is a matter of contract interpretation and application and is thus a matter for resolution by the arbitrator (Board of Educ. v Barni, 49 NY2d 311) and arbitration should not be stayed in such circumstances (Matter of Board of Educ. v Deer Park Teachers Assn., 50 NY2d 1011).
In conclusion, even if it is assumed, arguendo, that there is a public policy against arbitration of the instant dispute, a stay of arbitration would still not be proper since there is a competing policy consideration, i.e., the public policy of this State to include rather than exclude all terms and conditions of employment in negotiations and grievance procedures and that employers presumptively have broad powers to do so absent express statutory prohibition (see Matter of Currie v Bixby, 40 AD2d 341). Upon the instant facts, that public policy would appear stronger than that alleged by the village and must, therefore, be deemed
*1076 controlling (cf. Matter of Neirs-Folkes, Inc. (Drake Ins. Co. of N. Y.], 75 AD2d 787).
The application to stay arbitration is denied.