Matter of Boss v Kelly (2004 NY Slip Op 24122)

Matter of Boss v Kelly

2004 NY Slip Op 24122 [3 Misc 3d 936]

April 14, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, July 14, 2004

[*1]
In the Matter of Kenneth Boss, Petitioner,
v
Raymond W. Kelly, as Police Commissioner of the City of New York, et al., Respondents.
Supreme Court, New York County, April 14, 2004

APPEARANCES OF COUNSEL

Edward W. Hayes, P.C., New York City, for petitioner. Michael A. Cardozo, Corporation Counsel, New York City (Sara Mason of counsel), for respondents.

{**3 Misc 3d at 937} OPINION OF THE COURT

Michael D. Stallman, J.
This CPLR article 78 proceeding seeks an order restoring petitioner police officer to full duty and challenges respondents' determinations to continue him on modified assignment.

Background

Appointed a police officer in 1992, petitioner was indicted, tried and acquitted of criminal charges concerning the fatal shooting of Amadou Diallo on February 4, 1999. After indictment, the Police Department placed petitioner on modified assignment. After acquittal, the Department's Firearms Discharge Review Board investigated petitioner's conduct. In 2001, it determined that he had not violated the Department's firearms guidelines. The Board recommended that petitioner be retrained in "cover and concealment" tactics and that he remain on "non-enforcement duty" to be reviewed in April 2002. The Department apparently did not send petitioner for retraining and did not bring any disciplinary or other administrative proceeding concerning him. In April 2002, the Commissioner continued the modified assignment, and indicated that the Department would review petitioner's status the next year. Petitioner commenced this proceeding challenging that determination. After this court denied respondents' motion to dismiss (see decision, Feb. 18, 2003) and before final submission of this proceeding in February 2004, respondents again continued the modified assignment.[FN1] 

(See Kelly affidavit ¶ 8.)

[*2]{**3 Misc 3d at 938}Contentions

Petitioner claims he was exonerated criminally and departmentally, entitling him to full duty status. Petitioner contends that continued modified assignment is unauthorized, punitive and stigmatizing. He asserts that his prior police service was exemplary, citing the six annual performance evaluations preceding the shooting, which rated him between "Extremely Competent" and "Highly Competent."[FN2]

The Commissioner asserts that he decided not to restore petitioner to full duty after "carefully weighing many factors." (Kelly affidavit ¶ 3.) The Commissioner based his decision, inter alia, on concern that the spotlight cast by the shooting and trial would hamper petitioner on full duty, affect his interaction with others, and impair the effectiveness of those assigned with him. The Commissioner indicates that "for a police officer to perform effectively, he must be able to communicate with the public and have the confidence and respect of the community served." (Id. ¶ 5.) The Commissioner contends that, were petitioner to take any police action involving the use of force, both he and the Department would be subjected to prejudgment. Respondents conclude that the best interest of the Police Department, the city, and petitioner require that he remain on "non-enforcement or 'modified duty' status." (Id. ¶ 4.)

I

The Commissioner exercises broad discretion to manage the Police Department, necessarily including deployment of personnel and their assignment to appropriate duties. That discretion extends to personnel evaluation, investigation and discipline. It includes imposition of penalties, and specific assignment restrictions, on administratively disciplined officers.[FN3]

(Matter of Kelly v Safir, 96 NY2d 32 [2001].) Departmental discretion to limit assignments extends beyond the disciplinary context. The Police Department is a quasi-military organization (see Matter of Caruso v Ward, 72 NY2d 432 [1988]), warranting greater judicial deference to discretion in personnel matters than otherwise appropriate{**3 Misc 3d at 939} in public employment. (Incorporated Vil. of Malverne [Malverne Police Benevolent Assn.], 72 AD2d 795 [2d Dept 1979].)
The Commissioner, as the Department's chief executive officer (New York City Charter § 434), requires broad discretion to maintain discipline, efficiency, integrity and morale throughout the chain of command. The Commissioner ultimately is responsible for protecting both the community and departmental personnel from foreseeable risks, and the Department from potential liability, in tort or otherwise. (See McGuire v Krane, 48 NY2d 661, 662 [1979].) Thus, the Commissioner must have broad discretion to assess the implications of placing a particular officer on any given assignment.
Nevertheless, the Commissioner's discretion is not unlimited. The Commissioner may not exercise that discretion arbitrarily, capriciously or illegally. The state Civil Service Law, the Administrative Code of the City of New York, and the Department's own Patrol Guide variously limit the [*3]Commissioner's discretion. (See Matter of Rosenkrantz v McMickens, 131 AD2d 389 [1st Dept 1987].)
The Patrol Guide is a compendium of rules and directives controlled by the Commissioner. It is "the vehicle by which the Police Department regulates itself." (Flynn v City of New York, 258 AD2d 129, 138 [1st Dept 1999].) An internal procedure manual, it covers virtually every aspect of police conduct on and off duty, including personal appearance, financial dealings, time and leave, and discipline. The Patrol Guide is not a statute or local law.[FN4] 

(Flynn v City of New York, 258 AD2d 129 [1st Dept 1999].) Rather, the Commissioner promulgates and revises it periodically; its looseleaf form facilitates frequent amendment.
As a creation of the Commissioner, the Patrol Guide cannot ultimately limit the Commissioner's authority. However, as to personnel matters, the Commissioner must draft and interpret the Patrol Guide consistently with civil service laws and other statutes of general application. (See Matter of Garcia v Bratton, 90 NY2d 991 [1997]; Matter of Lugo v Damiano, 178 AD2d 827 [3d Dept 1991]; Matter of Tanico v McGuire, 80 AD2d 297 [1981].){**3 Misc 3d at 940}
When the Patrol Guide includes an apparently absolute rule concerning terms and conditions of employment, the Department is bound by it, until the Commissioner permissibly changes it. (See Matter of Tanico v McGuire, 80 AD2d 297 [1st Dept 1981], supra.) Accordingly, the Commissioner must follow the Patrol Guide when determining petitioner's status.

II

Petitioner has not met his burden of demonstrating entitlement to full duty. Nothing in state or city law or regulation, or the Patrol Guide, mandates automatic reinstatement upon acquittal and firearm discharge review. Neither has petitioner demonstrated that the Commissioner acted arbitrarily or capriciously by declining to restore petitioner to full duty.
A full duty police officer ordinarily carries a firearm. (See Patrol Guide, Uniforms and Equipment, Procedure Nos. 204-08, 204-09.) Although not articulated in the parties' papers, it became clear at conference between the court and counsel that both sides are most concerned with the armed status that full duty presupposes. It is clear that petitioner's demand for full duty status is a demand for restoration of his gun.
The Patrol Guide does not give an officer an absolute right to have a firearm under any and all circumstances. The Patrol Guide provides that when an officer applies to have firearms restored, the applicant's commanding officer, the Medical Division, and the First Deputy Commissioner must approve or disapprove the application. (See Patrol Guide Procedure No. 206-17.) The Patrol Guide does not specify criteria for approval or disapproval. (Id.) Thus, whether or not to restore an officer's firearm appears to be within the discretion of the officer's superiors, and ultimately, that of the Commissioner, rationally exercised.[FN5]

Petitioner has not met his burden of proving that the Commissioner acted arbitrarily and [*4]capriciously, or contrary to law, by not restoring petitioner's weapon, or, indeed, by considering the firearms issue in denying a return to full duty. Under the unusual circumstances presented by this proceeding, it appears that the Commissioner rationally exercised his discretion by, inter alia, assessing the risks inherently posed by restoring petitioner's firearms should petitioner be involved in a future incident. This court cannot say that the Commissioner impermissibly{**3 Misc 3d at 941} or unreasonably considered the difficulty of defending the city against even unfounded claims that might arise from future conduct, e.g., that petitioner used excessive force, negligently made a judgment call or hesitated to use reasonable force. It is no violation of law, and no abuse of discretionand no criticism of petitionerfor respondents to have rationally and practically analyzed the Department's potential vulnerability and petitioner's future effectiveness as an armed, full duty officer, in light of foreseeable scrutiny and claims of tort liability which members of the public or fellow police officers might bring.

III

Whether the Commissioner permissibly placed petitioner on modified assignment requires a separate inquiry. Generally, the Department makes modified assignments during criminal actions, disciplinary proceedings or pending investigations. (Sorlucco v New York City Police Dept., 971 F2d 864 [2d Cir 1992].) The rank and file considers modified assignment as a disciplinary status. (Id.) The Patrol Guide addresses modified assignment in the section entitled "Disciplinary Matters." The Patrol Guide succinctly states the purpose of a modified assignment: to "assign a uniformed member of the service to non-enforcement duties pending determination of fitness to perform police duties." (Patrol Guide, Disciplinary Matters, Procedure No. 206-10.)
The Commissioner contends that he has the exclusive discretion to place an officer on modified assignment. (Patrol Guide, Disciplinary Matters, Procedure No. 206-07 ["Cause for Suspension or Modified Assignment" permits the Commissioner to "place a uniformed member of the service on modified assignment when, in (his) opinion, such action is necessary"].) However, Procedure No. 206-07, promulgated on January 1, 2000, must be read in pari materia with Procedure No. 206-10, "Modified Assignment," and Procedure No. 206-17, "Removal and Restoration of Firearms," both issued and effective on the same date. The latter two procedures, using identical language, both provide: "In incidents where there is no misconduct and no disciplinary action is anticipated, the member will not be placed on modified assignment. However, the member will be placed on restricted duty pending an evaluation of duty status." (Procedure Nos. 206-10, 206-17.)
These Patrol Guide provisions unambiguously provide that modified assignment may be used only as part of a disciplinary{**3 Misc 3d at 942} process, not adjunct to the Commissioner's broad discretion to assign personnel. Petitioner is not now charged with misconduct; he is not facing investigation or departmental charges. It thus appears that no disciplinary action is anticipated. Accordingly, petitioner may not be continued on modified assignment.
Having amended the Patrol Guide to limit modified assignment to disciplinary situations, the [*5]then Commissioner limited his successor's discretion. Unless and until respondent Commissioner amends the Patrol Guide, he is bound by its current text. While the Commissioner permissibly exercised discretion to keep petitioner off full duty, he mistakenly chose an unavailable alternative. Continuation on modified assignment ceased to be an option when petitioner's situation ceased being disciplinary.

IV

Although the Patrol Guide does not permit the Commissioner to keep petitioner on modified assignment, neither law nor the Patrol Guide requires the Commissioner to return petitioner to full duty. If the Commissioner continues to believe that full duty remains ill-advised, the Commissioner must exercise his discretion by choosing a permissible alternative assignment. Although the Patrol Guide does not specifically define every type of assignment, it mentions such nonfull duty assignments as "restricted duty," "non-enforcement duty" and "administrative duty." (Patrol Guide, passim.) Indeed, the Firearms Discharge Review Board recommended that petitioner be retained on "non-enforcement" duty, not modified assignment. Thus, it appears that the Commissioner has discretion to place petitioner on some type of useful, nonfull duty status other than the impermissible modified assignment.
Petitioner's current unarmed status limits the duties petitioner can perform. An unarmed officer may not be able to serve safely in uniform, whether on patrol or otherwise, or in direct contact with the public; some other type of productive departmental service would be appropriate.[FN6]{**3 Misc 3d at 943}

The precise manner in which this can be accomplished is not for this court to determine. Rather, it must be left to the sound discretion of the Commissioner, consistent with law and the Patrol Guide, whether as currently drafted or as amended.

Conclusion

Respondents did not act arbitrarily or capriciously or contrary to law by not restoring petitioner to armed full duty status. However, the unambiguous text of the Patrol Guide prevents respondents from keeping petitioner on modified assignment.
Accordingly, it is hereby ordered and adjudged that the petition is granted only to the extent that the matter is remanded to the Commissioner for further action consistent herewith.

Footnotes

Footnote 1: By stipulation dated April 2, 2004, the parties agreed that this CPLR article 78 proceeding and all papers filed by each side will also apply to the respondent's 2003 determination and any further determination continuing petitioner on modified duty and/or not restoring petitioner to full duty, made prior to this court's final determination; the pleadings were deemed so amended.

Footnote 2: Petitioner indicates that he received more than 40 medals prior to the shooting and that he and his partner were named Heroes of the Month (June 1998) and Cops of the Month (Dec. 1998).

Footnote 3: The Commissioner relies on case law holding that courts should defer to the Commissioner's choice of appropriate disciplinary penalties. However, this case does not involve the imposition of penalties; petitioner was not disciplined, and thus is not subject to any penalty.

Footnote 4: The Patrol Guide does not set forth an independent basis of tort liability or a different standard of care, despite frequent use of apparently mandatory language. (See e.g. Flynn v City of New York, 258 AD2d 129 [1st Dept 1999].) 

Footnote 5: The record does not indicate either that petitioner filed an appropriate application, or that such a request was denied.

Footnote 6: The Patrol Guide does not apparently address this situation, except insofar as it states that, in an appropriate case, when no disciplinary action is anticipated, "a captain or above may assign a uniformed member of the service to administrative duties in the next higher command without placing the member on suspension or modified assignment, when . . . facts or circumstances indicate such assignment would be in the best interests of the Department." (Patrol Guide Procedure No. 206-07.) Although the Patrol Guide does not specify whether such an assignment may be made if the officer is unarmed, there is no indication in the Patrol Guide that the officer would have to be armed if so assigned.